McGahen v. Carr.

## McGahen v. Carr.

6    331
97   596

6    331
j116  157

The fact that the treasurer of a county made a mistake, and deceived the agent of the owner, in representing that certain land was not assessed, and that no taxes were to be paid on it for a given year, cannot avail the owner, in a proceeding to set aside a decree of foreclosure against the land, under a tax deed, for the taxes of that year, unless some collusion or fraudulent combination be shown between the treasurer and the purchaser of the land.

Nor can the fact, that the land was assessed in the name of a wrong person, or that the owner, since the sale of the land for taxes, has paid the subsequent taxes on the same, avail to set aside a decree of foreclosure under a tax deed.

In cases where there is no personal service on the defendant, and he is served by publication, the mailing of a copy of the petition and notice to the defendant, as required by section 1826 of the Code, is an essential part of the service, the proof of which, or in excuse of which, should appear of record in the case; and the record should further show that such proof had been made, before a default was entered against the defendant.

The property of one person cannot be divested, and vested in another, in an *ex parte* proceeding, unless the record in the cause, shows that section 1826 of the Code was strictly complied with, or the decree recites and shows affirmatively, that copies of the petition and notice were directed to the defendant, as required by that section, or an excuse for not so mailing them, before a default entered.

To sustain a title under a sale for taxes, under a statute authority, in derogation of the common law, every requisite of the statute, having the semblance of benefit to the owner, must be strictly complied with, and the claimant under such a title, must prove that all the requisites

of the law have been complied with ; and unless the steps which the law requires to be taken, have been regularly pursued, the court has no jurisdiction under the statute, to divest a party of his property, and vest it in the State, or another person.

Although a decree of foreclosure under a tax deed, may recite that it "appeared to the court, that the defendant had been served with notice of the pendency of the suit, as required by law," the complainant, in a proceeding to set such decree aside, may aver and prove, that copies of the petition and notice were never directed to him, as required by section 1826 of the Code ; and that the proof required, was not made, nor any excuse shown, before taking a default against him.

The proof, that a copy of the petition and notice was directed to the defendant, or that his residence is unknown, as required by section 1826 of the Code, is an element of jurisdiction; and if the record does not show that such proof was made, before the default was entered, the decree is void.

Where in a proceeding to set aside a decree of foreclosure under a tax deed, the petition alleged, that in 1852, complainant purchased the lands in controversy ; that he was then, and continued to be a resident of the State of Virginia ; that for the year 1853, the said lands were assessed to G. and not to the complainant, the taxes amounting to $1,93 ; that in 1854, his agent called upon the proper officer, to pay the taxes on said land, and was informed that said land was not assessed, and no taxes were to be paid for the year 1853 ; that in May, 1854, the treasurer sold said lands for the delinquent taxes of 1853, to the defendant, who, on the 9th of June, of that year, received the said treasurer's deed ; that on the 24th of March, 1855, said defendant filed in the district court, his petition to foreclose the complainant's equity of redemption in and to said land ; that a notice, directed to complainant, was placed in the hands of the sheriff, who returned thereon, that said defendant (now complainant) was not found within his county ; that at the next April term of said court, an order was entered, continuing said cause until the next term, and directing publication to be made, as required by law; that at the November term, 1855, of said court, the said published notice, with the affidavit of the publisher, was filed, and thereupon default was entered against this complainant, and a decree rendered in favor of the then plaintiff, for the land ; that during all this time, complainant was a resident of the State of Virginia ; that he had no knowledge of the levy of said taxes, nor of the purchase by defendant of said land ; that he was ignorant of the institution or pendency of said suit, or of the judgment, until the spring of 1857 ; that he paid the taxes for the years 1854, 5 and 6 ; that the notice by publication, was not given, as required by law; that at the time of the rendition of said judgment, no proof was made to said court, that a copy of the petition and notice had been sent to the defendant, nor excuse shown for not sending the same;

that no such copies ever were sent, in fact; and that said defendant neglected and refused to send complainant copies of the petition and notice, for the purpose of obtaining said decree, without the knowledge of this complainant—to which petition was attached a copy of the decree under the tax deed, which decree, (among other things) recited " that defendant being called, came not, but made default, and it appearing to the court, that defendant had been served with notice of the pendency of this suit, as the law directs ;" and where the court sustained a demurrer to, and dismissed the bill : *Held*, That the court erred in dismissing the bill.

*Appeal from the Keokuk District Court.*

TUESDAY, JUNE 22.

IN CHANCERY. Demurrer to bill sustained, and complainant appeals. For the material parts of the bill, and the grounds of demurrer, see the opinion of the court.

*Jos. M. Casey*, for the appellant.

*Knapp, Caldwell and Wright*, for the appellee.

WRIGHT, C. J.—The complainant sets forth in his bill, that in 1852, he purchased from the United States, the lands in controversy, lying in Keokuk county; that he was then, and continued to be, a resident of the State of Virginia; that for the year 1853, said lands were assessed to Jesse Gahan, and not to the petitioner, and the said taxes, amounted to one dollar and ninety-three cents; that in 1854, his agent called upon the proper treasurer, to pay the taxes on the land, and was informed that said land was not assessed, and that no taxes were to be paid for the year 1853. He further represents that in May, 1854, the said treasurer sold said lands for the delinquent taxes of 1853, to the defendant, Carr, who on the 9th of June of that year, received the said treasurer's deed; that on the 24th of March, 1855, said defendant filed in the district court, his petition to foreclose the plaintiff's equity of redemption in and to said land, claiming the right to so foreclose

under and by virtue of his said purchase at said tax sale; that a notice directed to complainant, was placed in the hands of the sheriff, who returned thereon that said defendant, (now complainant), was not found within his county; and that, at the April term, 1855, of said court, an order was entered continuing said cause until the next term, and directing publication to be made, as required by law. He also represents that at the next term, to-wit: in November, 1855, the said published notice was filed, with the affidavit of the publisher, and that thereupon a default was entered against the complainant, and a decree entered in favor of said Carr for the land.

The bill then proceeds to state, that during all this time, complainant was a resident of the State of Virginia; that he had no knowledge of the levy of said tax, or of the purchase of said land by Carr; that he was ignorant of the institution or pendency of said suit, by Carr, or of the judgment, until in the spring of 1857; that he paid the taxes for the years 1854, 1855 and 1856; that the notice by publication was not given as required by law; that at the time of the rendition of said judgment, no proof was made to said court, that a copy of the petition and notice had been sent to the defendant, nor excuse shown for not sending the same; that no such copies ever were sent, in fact; that about the time of said sale by the treasurer, the said treasurer's books were changed, so as to show that said lands were assessed to this complainant; that defendant, Carr, had knowledge of this fact; that he fraudulently obtained said decree; that he fraudulently used and inserted the name of said complainant, as the person to whom said land had been assessed; and that he neglected and refused to send to the complainant copies of the petition and notice, for the purpose of obtaining said decree, without the knowledge of this complainant.   Copies of all the papers in said proceeding, are attached and made part of the bill.   The prayer is, that said decree be held null and void; that it be set aside; and the title in said land vested and confirmed in complainant, or if meet and prop-

er, that the said decree may be reversed. The decree, (as shown by the copy attached to the bill), recites " that the cause came on to be heard, upon the petition of plaintiff; that defendant being called, came not, but made default; and it appearing to the court that defendant had been served with notice of the pendency of this suit, as the law directs, it is therefore considered," &c., closing in the usual form of a decree in chancery, vesting the title in Carr, and barring the defendant's equitable right to redeem the said lands.

The demurrer to the bill specifies a great number of causes, some of which were sustained, and others over-ruled. As the complainant appeals, and relies upon the fact that the court erred in sustaining the demurrer for any one of the causes, we shall confine ourselves to such as were sustained. These are as follows: *First;* That Carr is not charged with having colluded with the treasurer, in deceiving complainant's agent, and any mistake made by such officer, cannot prejudice the purchaser. *Second:* That it can make no difference, as to the rights of the purchaser, that the land was assessed to Gahan, instead of McGahen. *Third:* That the payment of the taxes for the years 1854, 1855, and 1856, cannot affect the validity of defendant's title. *Fourth:* Because the bill shows a good title in defendant, and does not make a case entitling complainant to equitable relief.

The first, second, and third causes may be considered together. However promptly the complainant may have paid the taxes for other years, cannot avail him, if he failed for 1853, and such steps were taken, on account of his delinquency, as divested him of his title. Neither can it avail him, as against Carr, that the treasurer made a mistake, and deceived his agent, unless some collusion or fraudulent combination between the treasurer and Carr could be shown. And as to the mistake in the name of the person to whom the property was assessed, we are clear that this can make no difference. For, when we consider that this, and the other objections, are urged after

the decree has been entered, and insisted upon to defeat and set aside the judgment of a court having jurisdiction over the subject matter, they loose all the force or weight which they otherwise might have. *Gaylord* v. *Scarff*, *ante*, 179.

Under the fourth cause, the whole merits of the bill, are presented for our consideration. And, *first*: complainant insists that the bill is sufficient, and the decree should be set aside, because of the failure of Carr to send to him a copy of the petition and notice, no excuse being shown for such failure. Will a neglect in this respect, render the decree void; and if so, can the complainant be allowed to show it, against the averments of the decree itself?

We have heretofore held, in a direct proceeding on appeal, that it was error, to enter a judgment by default, until such proof was made, as is required by section 1826 of the Code. *Byington* v. *Crosthwait et al.*, 1 Iowa, 148; *Carr* v. *Kopp*, 3 Ib., 80. The effect of the failure to send such copies, where a decree or judgment is attacked, as in the case before us, has not been determined by the present members of this court.

The law is, that when service has been made by publication only, and no appearance had, default shall not be entered until proof has been made, that a copy of the petition and notice, was directed to the defendant, through the post office, at his usual place of residence, (stating the place), in sufficient time for his appearance, or that such residence is unknown to the plaintiff, or his attorney, or business agent, and could not, with reasonable diligence, be ascertained.

To sustain a title, under a sale for taxes, the following principles were recognized by this court, in the case of *Scott* v. *Babcock*, 3 G. Greene, 133: If lands are taken, under a statute authority, in derogation of the common law, every requisite of the statute, having the semblance of benefit to the owner, must be strictly complied with. A penalty so severe as this, should not attach, unless the officers of the government—its agents—have strictly com-

plied with, and fulfilled their duty. The law must have been strictly performed. Every statute authority, in derogation of the common law, to divest the title of one, and transfer it to another, must be strictly pursued, or the title will not pass. The claimant, under such a title, must prove that all the requisites of the law, have been complied with; and unless the steps which the law requires to be taken, have been regularly pursued, the court has no jurisdiction under the statute, to divest a party of his property, and vest it in the State, or another person. *Williams* v. *The State*, 6 Blackf., 36; *Atkins* v. *Kinman*, 20 Wend., 241; *Kellogg* v. *McLaughlin*, 8 Ohio, 114; *Sharp* v. *Spain*, 4 Hill, 81. And while these rules and principles may be regarded as strict, they are fully sustained by the authorities, and authorized by the peculiar nature and character of the proceeding under which the purchaser claims.

Keeping in view these general principles, it seems to us that the case of *Broghill et al.* v. *Lash*, 3 G. Greene, 357, fully disposes of this. In giving a construction to section 1826 of the Code, this language is used: "Without a compliance with the requirements of this section, the default could not be legally entered. Without a service on the defendant, in one of the modes prescribed by statute, the district court could not acquire jurisdiction of his person. The statute directly prohibits the entry of the default, until this proof of the mailing of the notice, &c., has been made to the court; until this was done, defendant was not in court. The question presented for adjudication, is not one of irregularity in the procedure of the court below, but of jurisdiction of the person of the defendant. It goes to the power of the court to try, determine and pass the judgment. Much might be said of the propriety, nay, necessity, of guarding carefully the rights of persons, whose interests are disposed of by a summary, stringent, and *ex parte* legal procedure; but here it is deemed unnecessary, as we think the provisions of the Code are such as to furnish the most ample evidence of the intent of the legislature on this subject. The *proof*

required, where service has been made by publication only, and no appearance had, is clearly made a condition precedent, without which, the court had no power to enter the judgment by default. *It is a jurisdictional fact, upon which, by the statute, the power of the court to act, is made to depend, and should appear of record in the case.* In the stead of personal and actual service, and a return thereof into court, by virtue of which, the court acquires jurisdiction of the person of the defendant, it is a mode of service by construction, provided by legislation to be used in proceedings mostly *ex parte*, and hence the reason of the strictness of the provision. The proof required, is made an element of jurisdiction by the statute, and the record should show thas it had been made before the default was entered." And see *Lot No. Two* v. *Swetland*, 4 G. Greene, 465. Whatever we might think of this rule, were it *res integra*, yet as a rule property, we are not at liberty to change it, without some imperious necessity. *Taylor* v. *French*, 19 Vermont, 49 ; *Bellows* v. *Parsons*, 13 N. H., 256 ; *Harmel* v. *Smith*, 15 Ohio, 134.

In this case, the complainant avers that he attaches to his bill, copies of all the papers and proceedings in the action commenced by Carr. He avers that the proof required, was not made; and that, in fact, copies of the petition and notice never were forwarded to him by mail, nor was any excuse shown for not sending the same. If so, upon the principles enunciated in the case, in 3 G. Greene, 357, the court had no jurisdiction, and no power to render the decree.

In coming to this conclusion, the leading difficulty has been, that the decree now attacked, recites that it was made to appear to the court, that the defendant had been served with notice of the pendency of said action, as required by law ; and we have doubted whether this averment was not sufficient, and whether the complainant should now be allowed to set up that the requisite proof was not made. The language of the law is, that "when service has been made by publication only, and no ap

pearance had," &c. If we regard the publication as the service, then the recital in the decree would be fully answered, without reference to the inquiry, whether the required proof was made. The case above recited, however, seems to treat the sending of a copy of the petition and notice, as an essential part of the service, and expressly holds that such proof should appear of record in the case—that the record should show that it had been made before the default was entered. And we can hardly believe, that it would be safe to establish the rule, that the property of one can be divested, and vested in another, upon an *ex parte* proceeding, unless the record shall show that such proof was made, (or excuse shown for not making it,) or the decree itself recite and show affirmatively, that such copies were mailed. Such a construction, tends more to secure parties in their just rights, and cannot reasonably work injustice to any one. If the rule is too strict, the remedy is with the law making power.

We conclude, therefore, that this point in the bill is well made, and that the court below erred in holding that it showed a good title in the defendant. This conclusion renders it unnecessary to notice the other points made by the appellant.

Judgment reversed.