## DICK *v.* FORAKER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF ARKANSAS.

No. 89. Submitted November 15, 1894. — Decided December 17, 1894.

The Circuit Court of the United States for the Eastern District of Arkansas
has jurisdiction of a suit in equity, brought by a citizen of Ohio against
a citizen of Illinois, to remove a cloud from the title to real estate situ-
ated in that district.

Without the statutory notice required by the Arkansas statute of March
12, 1881, No. 39, in proceedings for the fixing of tax liens for unpaid taxes
upon lands in the State, and the sale of the lands for the non-payment
thereof, the court can take no jurisdiction, and all proceedings therein
are void; and the fact that the State appeared in such a suit where that
notice had not been given, did not give the court jurisdiction, or render
the sale valid.

THE appellee, a citizen of the State of Ohio, brought his
complaint in the Circuit Court of the United States for the
Eastern District of Arkansas against the appellant, a citizen
of the State of Illinois. The bill sought to remove a cloud
from a title held by complainant, and charged, in substance,
that under an act of the legislature of Arkansas, approved
March 12, 1881, and an act amendatory thereof, approved
March 22, 1881, a decree was rendered in the Ashley County
circuit court, directing the sale of certain lands, for the pur-
pose of realizing taxes due upon them. That under this decree
a sale was made on September 15, 1884, by a commissioner of
the court; that at said sale the complainant became a purchaser
of the property, a description of which was given in the bill.
That the proceedings, as well as the sale, were in accordance
with the statute. That the lands thus purchased were not
redeemed as prescribed by law, and accordingly the court
ordered the commissioner to execute a deed therefor, which
the commissioner did on May 15, 1887, and the deed was
recorded in the proper office. That after this purchase the
defendant (appellant here) purchased through the commis-

sioner of lands of the State of Arkansas the said lands from the State, as forfeited for the non-payment of taxes; that the commissioner wrongfully and without authority of law, and in disregard of the rights of complainant, executed deeds for the lands to the defendant, which deeds were recorded, and, taken all together, purport to convey all of the land purchased by the complainant under the previous sale to him; that the deeds thus executed to the defendant, while they convey no title, constitute a cloud upon the complainant's title, and their appearance upon the record impairs the value of his property. The bill, moreover, averred that the land was vacant and in the actual possession of neither complainant nor defendant. The prayer of the bill was that the deeds made to the defendant be cancelled, and that the complainant's title to said land be quieted as against the defendant and all claimants under him. The defendant demurred to the jurisdiction of the court, and upon the overruling of his demurrer answered, averring the validity of the sale made him by the commissioner of lands, and claiming that the sales to the complainant under the proceedings in the Ashley County court were absolutely void, because there was no law authorizing them, because the court had no jurisdiction of the subject-matter, and because of fatal irregularities in the proceedings themselves. The court below decreed in favor of the complainant. From this decree the cause was brought here on appeal.

The defendant's title is derived from a sale made by the commissioner of lands of the State of Arkansas, treating the lands as forfeited to the State, this sale having been made subsequent to the proceedings upon which the complainant relied as his muniment of title.

The statutory provisions authorizing the proceedings upon which complainant's title rests are found in the Laws of Arkansas of 1881, page 89, Act of March 12, 1881, No. 39, and read as follows:

"SEC. 1. That hereafter any citizen of this State, who shall give security for cost, may file a complaint in equity in the name of the State in the court having equity jurisdiction in the county in which the lands lie, setting forth that taxes are

due on lands to be therein described, or that for any reason lands lying in the county have not been assessed for any one or more years, and praying that a lien may be fixed on such lands, by a decree of the court, for such unpaid taxes, and that the lands may be sold for the non-payment thereof. The county court of any county may direct such complaint to be filed in the name of the county ; and when it shall be filed in pursuance of such direction, it shall be prosecuted by the attorney for the county, or by some attorney to be retained for that purpose. . . .

"SEC. 2. On filing of such complaint, the clerk of the court shall enter on the record an order, which may be in the following form :

" ' State of Arkansas on relation of ———, plaintiff, *v.* Certain lands on which taxes are alleged to be due, defendant.

" ' Now, on this day came said plaintiff, and files here in court his complaint, in which he sets forth that there are certain taxes due on the following lands :

[Here insert description of the lands.]

" ' Now, therefore, all persons having any right or interest in said lands, or any of them, are required to appear in this court within forty days from this date, then and there to show cause, if any they can, why a lien shall not be declared on said lands for unpaid taxes, and why said lands shall not be sold for non-payment thereof.'

"SEC. 3. The clerk of said court shall at once cause a copy of said order to be published for two insertions in some newspaper published in the county, and, if there is no newspaper published in the county, he shall cause a copy of said order to be posted at the door of the court-house of the county, or of the room in which the court is held, and such publication shall be taken to be notice to all the world of the contents of the complaint filed as aforesaid, and of the proceedings had under it."

"SEC. 5. At the end of the forty days mentioned in section 2 of this act, the clerk shall enter upon the record a decree *pro confesso*, covering all lands named in the complaint, regarding which no answer has been filed, which order may be in the following form :

" ' State of Arkansas on the relation of ———, plaintiff, v. Certain lands on which taxes are alleged to be due, defendant.

" ' It appearing that the order herein made, requiring the owners of the lands in this suit to appear and show cause, if any they could, why a lien should not be declared on certain lands, named in the complaint herein, has been duly published in the manner required by statute, and that no answer has been put in as to the following tracts or parcels of land, that is to say :

[Here describe the lands.]

" ' It is now, therefore, ordered that the complaint be taken as true and confessed as to said lands above described.' "

In order to make out his case, the complainant offered the record of the proceedings in the Ashley County circuit court, from which his title took its origin. The record as offered is in a very imperfect state, but it appears therefrom that on May 4, 1884, on the relation of W. H. Arnold, a bill was filed, which, after setting out the above provisions of Arkansas law, substantially averred that upon certain lands described in an exhibit annexed, certain taxes had been extended which were past due, and other taxes had been extended which were unauthorized by law; that in pursuance of a warrant for the collection of taxes on these lands, the collector had demanded both the lawful and the unlawful taxes, and neither were paid, and the lands were returned as delinquent, and were forfeited and sold to the State for the taxes for which they had been respectively so returned; that the forfeiture and sale to the State were void, because unlawful taxes had been extended against the land, and also on account of many other irregularities; that hence the State of Arkansas had no valid title to any of the tracts, but, notwithstanding this fact, the state land commissioner had conveyed part of the land standing in the name of the State to such persons as had applied to purchase, and would convey the balance thereof unless the forfeiture was annulled.

This complaint as printed in the record is not complete. It contains no prayer, but the following memorandum is at the foot thereof:

" (Here the lower part of the complaint having become worn out and destroyed, it is impossible to furnish a copy of the same or the signature to the same.) The complaint was regularly filed, but it is also worn too much to be copied. — Clerk."

Annexed to the bill is a list of lands, containing among others, those which are claimed by the complainant. There is also the following entry in the record :

" No order appointing G. W. Norman and J. W. Van Gilder masters in chancery found on record, and below will be found the docket entry of the same made on the judge's docket, to wit :

" Made 9th day of February, 1884, to wit :

" George W. Norman and J. W. Van Gilder appointed masters in chancery to extend the taxes on said land before the next term of the court.

" Report of Masters in Chancery.

" June 2, 1884.

" To the Honorable Circuit Court of Ashley County :

" The undersigned, masters in chancery, appointed to extend the taxes in the case now pending in said court on the relation of W. H. Arnold vs. Certain Lands upon which it is alleged taxes are due, beg leave to report that they have discharged said duty as follows, by consent of parties representing the State, the county, and the attorneys who brought the suit against said lands :

" The taxes, penalties, and costs were fixed at 15 cents per acre. Of this amount four cents is to be paid to the county, two cents to the State, and the balance appropriated to expenses as follows: The attorneys, 3200 dollars; to clerk, 2500 dollars; to printer, 1250 dollars; to com'r, 1000; to masters in chancery, 1000, and the excess that may be realized above these amounts be distributed to the State and county in proportion to two to one in favor of the county.

" In making the extension aforesaid, we were of the opinion that the said six cents per acre about covered the average of taxes due on said lands, as the alleged forfeitures occurred at different periods of time.

"We further report that we are fully satisfied that a sale of the lands embraced in this report thus returned to the tax books, the settling of disputed titles, etc., will inure to the benefit of the entire community; and we further report that we find certain lands marked on the bill were claimed by parties who have made to us satisfactory showing that the said lands were improperly thereon, and that said parties claimed that the taxes thereon had been paid, and that the title of the State to certain other lands was good.

"In each of said cases we have dismissed said lands, and we desire the record in this case should show said fact of dismissal.

"John W. Van Gilder.

"Geo. W. Norman.

"Filed June 2, 1884.

"E. L. Thomson, *Cl'k,*

"By Jackson, *D. C.*"

It is to be inferred, of course, that the masters here named were regularly appointed. On June 2, 1894, the following was entered of record :

"It appearing that the order herein made requiring the owners of the lands in this suit to appear and show cause, if any they could, why a lien should not be declared on certain lands named in the complaint herein, has been duly published in the manner required by statute, and that no answer has been put in as to the following tracts or parcels of land — that is to say :

[Here follows a description of the land.]

"And it further appearing that the creditor of the State, the relator, the prosecuting attorney of the 10th judicial district, and the judge of the county of Ashley have appeared and consented that a decree should go against the above-described lands for the taxes, penalty, and costs assessed against them as fixed by the master's report filed herein, it is therefore ordered, adjudged, and decreed that the amount of taxes, penalty, and costs above set forth are due on said lands, and that a lien for said taxes, penalty, and costs on said lands be fixed

by this decree; and it is further ordered that, if said sum of money so adjudged against said lands shall not be paid within twenty days from the 3d day of June, 1884, the said lands shall be sold by a commissioner to be appointed by the chancellor, on the notice and at the place prescribed by law; and it is further ordered that Thos. S. Stilwell be, and he is hereby, appointed as special commissioner of this court, and that, having made the publication required by law, said commissioner proceed to expose the said lands for sale on Monday the 21st day of July, 1884, at the court-house door, in the town of Hamburg, and that said sale continue from day to day till all of said lands be sold: *Provided*, That said lands are not to be sold for an amount less than the taxes, penalty, and costs herein assessed against each of said tracts of said lands, and that he report his action herein to the next term of this court. It is further ordered that upon sale aforesaid said commissioner pay the fees and costs as follows, viz.:

" To the attorneys, thirty-two hundred and fifty (3250) dollars; to the clerk, twenty-five hundred (2500) dollars; to the printer, twelve hundred and fifty (1250) dollars; to commissioner, one thousand (1000) dollars, and to the masters, one thousand (1000) dollars; and if enough of said — are not sold to pay the above sums, that the commissioner pay *pro rata*."

The execution of this order was postponed by direction of the court, but on September 14, 1884, the lands claimed by complainant were adjudicated to him, and on May 14, 1887, upon the expiration of the period allowed for the redemption, the commissioner made to complainant a deed, which was approved by the court.

*Mr. W. L. Terry* for appellant.

*Mr. D. W. Jones* for appellee.

Mr. Justice White, after stating the case, delivered the opinion of the court.

The suit was one to remove a cloud from the title to real estate situated in the district where the suit was brought.

The defendant was a citizen of another State. The case was obviously within the jurisdiction of the court. Revised Statutes, § 738; Act of March 3, 1875, c. 137, § 8, 18 Stat. 470; Act of August 13, 1888, c. 866, § 5, 25 Stat. 433; *Mellen* v. *Moline Malleable Iron Works*, 131 U. S. 352; *Arndt* v. *Griggs*, 134 U. S. 316; *Greeley* v. *Lowe, ante*, 58.

The contention is that the law giving jurisdiction, as against a person not a citizen of the district where suit is brought to remove a cloud from the title to real estate, situated therein, applies only to cases where there are two or more defendants, at least one of whom must be found in the district where the suit is brought; that the jurisdiction exists to entertain a suit, like the one before us, where there are two or more defendants, but not where there is only one. It was admitted that this contention is unsound as applied to Rev. Stat. § 738, but it is insisted that the point is well taken in consequence of a change resulting from the reënactment of Rev. Stat. § 738, to be found in section 8 of the act of March 3, 1875. The Revised Statutes gave the right to bring such a suit where "any defendant" resided out of the district. The act of 1875 gives the right "where one or more" may so reside. We see no force in this argument, which in effect eliminates the word "one" from the statute and replaces it by the word "two," thus causing it to read "two or more," instead of "one or more." The suggestion that as the words "one or more," in section 737, Rev. Stat. contemplated a controversy in which two or more defendants would be involved, therefore the words "one or more" mean the same in the Act of 1875, is fallacious.

Section 737 provides for a case where there are "several defendants" and "one or more" may be outside of the district; the Act of 1875, on the contrary, provides for a case where "one or more of the defendants" may be outside of the district, the difference between the two being that which exists between "one or more of several" and "one or more." The demurrer was, therefore, correctly overruled.

The act of the Arkansas legislature which we have cited provides that on the filing of the complaint with the clerk, an

order shall be entered on the record, notifying all persons having any right or interest in the lands sought to be sold to appear within forty days, and show cause why a lien should not be declared on said land for unpaid taxes, and why said land should not be sold for non-payment thereof. The act directs the clerk to cause a copy of this order to be inserted twice, in a newspaper published in the county, and if there be no such newspaper to post a copy at the court-house door. It further declares that such publication shall be taken to be notice to all the world of the contents of the complaint. These are the only provisions made in the act for notice to the land owner. The proceedings leading up to the tax sale, as they appear on the record before us, do not include the required notice nor any order therefor, nor is it shown that any such notice was put on record in the course of the tax sale proceedings. It is true that the order directing the sale recites: "It appearing that the order herein made requiring the owners of the land in this suit to appear and show cause, if any they could, why a lien should not be declared on certain land, has been duly published in the manner required by statute," etc. This indirect reference to the notice is the only record evidence that such a notice was made, put on record, or published.

In *Gregory* v. *Bartlett*, 55 Arkansas, 30, 33, the Supreme Court of that State, having before it a case in which the notice required by law under the terms of the second section was not properly given, said :

"Without the statutory notice, therefore, there can be no jurisdiction. If the clerk makes the warning order, as the second section of the act requires, but fails to publish or post it, and that fact appears in the judgment record, there could be no justifiable pretence of jurisdiction. If he publishes the statutory warning without first making the order required by section 2, the question is, does he make a legal publication? In other words, is he authorized by the statute to make publication when there is no previous order of record? If he is not so authorized, then the publication is without authority and is not legal notice to the owner of the land. . . . When this requirement of the statute is complied with, it furnishes to the

owner of delinquent lands a means of information which the statute designed he should receive. Searching the records and finding no order for a proceeding against his land, he had a right to present that none existed. There is nothing in the statute to indicate that the legislature considered the entry of the order upon the record as of any less significance than the publication of it. In a section of the act where a form of a decree to be entered is given, it is made to recite that the order was entered of record as well as that it was published; and the requirement as to publication is that a copy of the record entry shall be published. The order is the sole authority for the publication, and the evidence of it which the statute requires is the record entry. . . .

"The statute does not authorize the clerk to make the order in any manner other than by entry on the record, and authorizes publication of nothing except a copy of the record. To say that the clerk can dispense with the record and make his entry, in the first instance, in a newspaper, would be to disregard a plain provision of the statute and dispense with one of the means the law affords for imparting information to the land owner. But when a statutory provision is plain, and is made to aid in the accomplishment of a useful end, it cannot be treated as merely directory, and so be disregarded. Especially does that rule apply to proceedings where publication is relied upon as a substitute for personal service. *Bush* v. *Visant,* 40 Arkansas, 124; *Brodie* v. *Skelton,* 11 Arkansas, 120. . . . No process was ever issued in the cause in which the challenged decree was rendered; the court's determination of any question was therefore *coram non judice,* and binding upon no one. . . . The recital of the decree that there was proper notice to the parties in interest is not conclusive of that fact, but must be read in connection with that part of the record which gives, or is required to give, the official evidence of jurisdiction, as prescribed by statute. *Boyd* v. *Roane,* 49 Arkansas, 397; *Settlemier* v. *Sullivan,* 97 U. S. 444; *Galpin* v. *Page,* 18 Wall. 350.

"If such evidence is not required by the statute to be placed upon the record, and the record recites or is silent as to the

facts necessary to show jurisdiction, their existence will be presumed, but no presumptions are indulged when the evidence is stated upon the record, *Boyd* v. *Roane*, 49 Arkansas, 397, or where the statute requires the jurisdictional facts to appear of record and they are not made so to appear."

Thus the Supreme Court of Arkansas, in interpreting a statute of that State, has held that the making of the record entry of the notice required, and also the proof of its publication are indispensable to the validity of proceedings under the statute; that such recorded notice is essential to give jurisdiction to the court, and that where the notice is not of record the proceedings are absolutely void. As we have seen, this record does not show either notice or publication. The appellee, then, seeks to have a cloud removed from his title when he holds no title whatever; for, of course, it follows that if the court was without jurisdiction the decree by it rendered was utterly void, and the sale, having been made under the decree, was equally vicious and wholly null. The rule in ejectment is that the plaintiff must recover on the strength of his own title, and not on the weakness of the title of his adversary. A like rule obtains in an equitable action to remove a cloud from a title, and title in the complainant is of the essence of the right to relief. In *Frost* v. *Spitley*, 121 U. S. 552, 556, we said: "Under the jurisdiction and practice in equity, independently of statute, the object of a bill to remove a cloud upon title, and to quiet the possession of real estate, is to protect the owner of the legal title from being disturbed in his possession, or harassed by suits in regard to that title; and the bill cannot be maintained without clear proof of both possession and legal title in the plaintiff. *Alexander* v. *Pendleton*, 8 Cranch, 462; *Peirsoll* v. *Elliott*, 6 Pet. 95; *Orton* v. *Smith*, 18 How. 263; *Crews* v. *Burcham*, 1 Black, 352; *Ward* v. *Chamberlain*, 2 Black, 430. As observed by Mr. Justice Grier in *Orton* v. *Smith*, 'Those only who have a clear, legal and equitable title to land, connected with possession, have any right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title.' 18 How. 265."

The law of Arkansas authorizes a bill to remove a cloud on

a title whether or not the complainant be in possession. Act of March 26, 1891, No. 74, Stats. of 1891, 132. By reason of this statute a bill in equity may be maintained in the Circuit Court of the United States by a person not in possession against another who is also out of possession. *Holland* v. *Challen*, 110 U. S. 15, 25. But this does not make the complainant's rights any the less dependent upon title in him nor does it put him in a position to have a cloud removed from a title which has no existence. In *Frost* v. *Spitley, supra*, it was said, p. 557:

"A statute of Nebraska authorizes an action to be brought 'by any person or persons, whether in actual possession or not, claiming title to real estate, against any person or persons who claim an adverse estate or interest therein, for the purpose of determining such estate or interest, and quieting the title to said real estate.' Nebraska Stat. Feb. 24, 1873; Rev. Stat. 1873, p. 882. . . . The requisite of the plaintiff's possession is thus dispensed with, but not the other rules which govern the jurisdiction of courts of equity over such bills. Under that statute, as under the general jurisdiction in equity, it is 'the title,' that is to say, the legal title, to real estate, that is to be quieted against claims of adverse estates or interests. In *State* v. *Sioux City & Pacific Railroad*, the Supreme Court of Nebraska said: 'Whatever the rule may be as to a party in actual possession, it is clear that a party not in possession must possess the legal title, in order to maintain the action.' 7 Nebraska, 357, 376. And in *Holland* v. *Challen*, above cited, this court said: 'Undoubtedly, as a foundation for the relief sought, the plaintiff must show that he has a legal title to the premises.' The necessary conclusion is, that Spitley, not having the legal title of the lots in question, cannot maintain his bill for the purpose of removing a cloud on the title."

It is said that the State of Arkansas became a party to the proceedings in the Ashley County court, and is hence bound thereby, and from this is deduced the argument that inasmuch as the defendant derived his title from the State subsequent to the complainant's purchase, the latter's title is validated.

*Stafford* v. *Watson*, 41 Arkansas, 1.  But the appearance of the State did not cure the radical defect in the proceedings under which complainant purchased.  The notice was essential in order to affect the rights of the owner of the property as against whom the proceedings were initiated and the sale was made. · The appearance of the State did not, therefore, give the court jurisdiction or render the sale valid.  There are other contentions urged, but they·are all covered by what has been already said.  They either arise from the erroneous postulate that the complainant's title is not void, but simply voidable, or are predicated on the equally unsound premise that one having no title can successfully invoke the aid of a court of equity to "remove a cloud" from such non-existent title; that is to say, can ask a court to subtract something from nothing.

*Decree reversed and case remanded with directions to dismiss the bill.*