Argued at Pendleton May 2; reversed June 27; rehearing
denied September 19, 1944

## ELLIOTT *v.* CLEMENT ET AL.

(149 P. (2d) 985, 151 P. (2d) 739)

Before BAILEY, Chief Justice, and BELT, LUSK, BRAND and HAY, Associate Justices.

*A. S. Cooley,* of Pendleton, for appellants.

*Earl B. Moore,* of John Day, and *Harold Banta,* of Baker (Hallock, Donald & Banta, of Baker, on the brief), for respondent.

This case involves the validity of a tax title.

In 1935 Grant County commenced a general proceeding to foreclose the liens of certificates of delinquency issued on account of delinquent taxes for the year 1930 against a great many parcels of land. That suit was entitled "*Grant County v. Edna Arnold et al.*". A decree of foreclosure was entered October 21, 1935.

A foreclosure sale was held on November 2, 1935, at which Grant County purchased all the real property involved in the suit, and subsequently, on March 22, 1941, the plaintiff purchased certain parcels thereof from the county, including the Northwest Quarter of Section 6 in Township 8 South of Range 33 East of the Willamette Meridian, the title to which is here in dispute.

Thereafter the plaintiff brought this suit to quiet title. The appealing defendants (hereinafter called the defendants), except Pilot Rock Lumber Company, a corporation, are the heirs of Nathan B. Parkman, who owned the land at the time of his death in 1913. In their answer they alleged a large number of defects in the foreclosure proceedings. After this suit was commenced Pilot Rock was made a party defendant, pursuant to stipulation of the other parties, apparently for the reason that during the pendency of the suit it had entered into a contract to purchase the land in controversy from the defendant heirs, contingent on the establishment of their title, and agreed to pay the costs and attorneys' fees incurred in the litigation. Pilot Rock, in its answer, alleged the same defects in the proceedings as did the other defendants.

In replies filed by the plaintiff to the separate answers it was alleged that Pilot Rock, by reason of the contract of purchase, was to all intents and purposes the real party in interest, that all the defendants were barred from attacking the validity of the decree and the deeds by the three-year statute of limitations, and that Pilot Rock was estopped to do so because it appeared at the sale in March, 1941, and bid on the land in controversy and purchased one of the tracts involved in the foreclosure proceedings.

The circuit court entered a decree for the plaintiff, from which the defendants have appealed.

LUSK, J. Several alleged defects in the foreclosure proceedings entitled *Grant County v. Edna Arnold et al.* are urged by the defendants, but there is one which, in our judgment, is decisive of the case and, therefore, the only one that need be discussed.

By the published summons the defendants were required "to appear within sixty days from and after the date of service upon you, exclusive of the first day of said service, and defend this suit." The proceedings were governed by §§ 69-807 and 69-816, Oregon Code 1930. The latter section provides that "in all foreclosures by a county summons may be served or notice given exclusively by publication in one general notice", while § 69-807 prescribes that when service is made by publication the summons shall contain a direction "to appear within sixty days after the date of the first publication of the summons, exclusive of the date of said first publication, and defend the action or pay the amount due".

The published summons did not comply with the requirement of the statute.

The Supreme Court of Washington, after whose laws our statute is patterned (*Hoskins v. Dwight,* 69 Or. 558, 565, 139 P. 922; *Getchell v. Walker,* 129 Or. 602, 278 P. 93; see specially concurring opinion of Mr. Justice ROSSMAN in *National Surety Corporation v. Smith,* 168 Or. 265, 325, 114 P. (2d) 118, 123 P. (2d) 203), in several decisions rendered before this state's adoption of the statute, held "that a tax foreclosure summons which does not conform to existing law in the important feature of fixing the time within which a defendant shall appear is so fatally defective that it

confers no jurisdiction to enter a judgment, and that a judgment entered thereon is void." *Woodham v. Anderson,* 32 Wash. 500, 73 P. 536 (1903). In that case the summons required the defendants to appear "within sixty days from the date of the first publication of the summons." The applicable statutes provided that the summons in a tax case should require the defendants to appear within sixty days after the service of the summons, exclusive of the day of service, and that service of publication should not be deemed complete until the expiration of the time required for publication. It was held that the court lacked jurisdiction and the judgment, therefore, was void. *Thompson v. Robbins,* 32 Wash. 149, 72 P. 1043 (1903); *Smith v. White,* 32 Wash. 414, 73 P. 480 (1903); and *Young v. Droz,* 38 Wash. 648, 80 P. 810 (1905), each dealt with a summons containing the direction "to appear within sixty days after the service of this summons upon you, exclusive of the day of service". The governing statute as to these three cases provided that the summons should direct the defendant "to appear within sixty days after the date of the first publication of the summons exclusive of the day of said first publication." In all three cases the summonses were held fatally defective and the judgments of foreclosure void. In *Smith v. White,* supra, the court quoted with approval the following language from *Thompson v. Robbins,* supra:

"This summons was not in accordance with the statute and its publication did not confer upon the court jurisdiction to render the judgment which was entered in the foreclosure proceeding. And the judgment was therefore not merely irregular but void."

Like decisions are *Thompson v. Schoner,* 58 Wash. 642, 109 P. 116 (1910); *Owen v. Owen,* 41 Wash. 642,

84 P. 606 (1906); *Dolan v. Jones*, 37 Wash. 176, 79 P. 640 (1905).

In principle these cases are not to be distinguished from the instant case. The summons here not only does not comply with the statute—so much is admitted—but it is also "indefinite and uncertain as to the time within which he (the defendant) was required to enter his appearance in the proceeding." *Thompson v. Robbins,* supra. We cannot accept the view that a defendant could be expected to know that the words "exclusive of the first day of service" were intended, when taken with the other language of the summons, as a direction to appear within sixty days after its first publication, for the summons nowhere refers to the time of any publication as the date from which the sixty days is to commence to run. The direction to appear "sixty days from and after the date of service upon you" is, in our opinion, meaningless, and there is, therefore, no room for the contention that the summons gives the defendants more time for appearance than does the statute and that the defect is a mere irregularity. If more time, how much more? And when would the court be authorized to enter a default for a defendant's failure to appear?

■ We will not stop to inquire whether the rule should be applied here that we are governed by the Washington court's construction of their statute. It is intimated by the plaintiff that this rule is inapplicable because in this state tax foreclosures by counties were not declared to be proceedings *in rem* until 1919 (General Laws of Oregon 1919, Ch. 408, § 4, p. 756; § 69-816, Oregon Code 1930). That fact is also made the basis of an argument, presently to be noticed, that the defect in the summons is not jurisdictional. But whether the Washington decisions are binding on us or not, they are

certainly highly persuasive; no cases to the contrary have been cited; and, as we shall presently endeavor to show, they are sound in principle.

Certainly the 1919 amendment of our statute, which provided that "said proceedings shall be and be deemed and considered a proceeding in rem against the property itself", affords no basis for distinguishing the Washington cases, because in Washington, although there is no such language in the statute of that state, the proceedings have more than once been declared to be *in rem*. *Reese v. Thurston County*, 154 Wash. 617, 623, 283 P. 170 (1929); *Washington Timber, etc., Co. v. Smith*, 34 Wash. 625, 76 P. 267 (1904). In the latter case the court said:

> "The difficulties attending the collection of public revenue are many at best, and the relation of the citizen to the subject is somewhat different from his relation to the ordinary contractual obligations. He must take notice that by law his property is assessed each year, that the tax is due and delinquent at a fixed time, is a lien upon his land, and, if not paid, that the lien shall be enforced by foreclosure proceedings, and in the manner provided by statute. The action is not *in personam* but *in rem* * * * *"

It is not necessary, indeed, that the legislature should in express terms define the nature of the proceedings, for, as Judge Cooley says:

> "Proceedings of this nature are not usually proceedings against parties, nor, in the case of lands or interests in lands belonging to persons unknown, can they be. They are proceedings which have regard to the land itself rather than to the owners of the land, and if the owners are named in the proceedings and personal notice is provided for, it is rather from tenderness to their interests, and in

order to make sure that the opportunity for a hearing is not lost to them, than from any necessity that the case shall assume that form." Cooley on Taxation (3d ed.) 884.

The argument that the defect in the summons is a mere irregularity which did not go to the jurisdiction of the court, is thus stated in the plaintiff's brief:

"The proceeding being in rem against the property itself, all that is necessary to jurisdiction is that the property be subject to the tax and that the taxes have not been paid. Any other deficiency or error is a defect merely and waived unless timely raised", citing § 69-829, Oregon Code 1930.

Again it is said:

"Service on anyone is not essential to jurisdiction. All persons interested in the property 'are required to take notice of said proceedings and of any and all steps thereunder' ".

The phrase quoted in the foregoing excerpt from the plaintiff's brief is taken from the following sentence of § 68-818, *ibid*:

"The name of the person or persons appearing on the latest tax roll in the hands of the sheriff for collection at the date of the first publication of such summons or notice as the owner or owners of said property shall, for the purpose of this section and all foreclosures by counties, be considered and treated as the owner or owners of said property, and said proceedings shall be and be deemed and considered a proceeding in rem against the property itself; and if upon said rolls it appears that the owner or owners of said property are unknown, then said property shall be proceeded against as belonging to an unknown owner or owners, as the case may be, and all persons owning or claiming to own or having or claiming to have an interest therein hereby are required to take notice of said proceedings, and of any and all steps thereunder."

It is argued that the evident intention of the amendment was to prevent foreclosures by a county from being nullified on account of deficiencies in the manner of service, and that the amendment was induced by the decision in *Bagley v. Bloch,* 83 Or. 607, 163 P. 425, rendered a short time before the amendment.

The statute governing notice in the tax proceedings involved in *Bagley v. Bloch,* supra, provided that "summons shall be served and returned in the same manner as summons in a civil suit is served in the Circuit Court": § 3696, L. O. L. The decree of foreclosure was set aside because Bagley, the owner of the property who was a resident of Hillsboro, Oregon, was not personally served, and there was no showing of facts which justified the resort to constructive service. The court said:

> "The method of securing jurisdiction of the person by a constructive service of process is not in conformity with the principles of the common law, but is given by statute, which enactment being in derogation of the ancient law is to be construed strictly" (83 Or. 620).

■ Numerous Oregon decisions announcing and applying this fundamental rule were cited. The case is authority supporting the principle that, when the statute prescribes the method of giving notice in a tax foreclosure proceeding, its provisions must be followed and that provisions for service of summons by publication must be strictly pursued.

■ The legislature, in adopting the 1919 amendment, did not intend to dispense with the necessity of a notice of some kind that would meet the requirements of due process of law, nor to authorize the courts to say that in a proceeding brought by a county the provision

for publication of summons might be ignored; but its purpose was, as we said in *Rae v. Morgan,* 125 Or. 644, 659, 266 P. 1069, 267 P. 1072, ''to point out clearly that in all foreclosures by a county the summons shall be served by publication, and the person appearing on the latest tax-roll shall be the defendant, and the proceedings shall be deemed *in rem.*'' (The court there was referring to Ch. 276, General Laws of Oregon 1923, an amendment of the 1919 act, which, however, preserved the language, above quoted, on which the plaintiff relies). We think that the construction sought to be placed upon these provisions is inadmissible and would render the statute of doubtful constitutionality. See *In re Petition of Auditor General,* 275 Mich. 462, 266 N. W. 464, 107 A. L. R. 279. It is our duty to give effect to all the terms of the statute, and, when that is done, the language which the plaintiff invokes simply means that, where notice has been given by publication of summons in accordance with the mandate of the statute, all persons, including unknown owners, and whether they are named as defendants or not, must take notice of the proceedings. Any other construction would excise the provision for publication of summons. We have no authority to excise it. That provision was placed there for protection of owners of land affected by the tax proceedings, and ''where property is taken under statutory authority in derogation of common right, every requisite of the statute having a semblance of benefit to the owner must be complied with, or the proceeding will be ineffectual.'' Cooley's Constitutional Limitations (7th ed.) 750.

In Cooley on Taxation, *id.,* 879, it is said:

''In any judicial proceeding the court which assumes to act must have that authority of law for the purpose, which is called jurisdiction. This con-

sists in, *first,* authority over the subject-matter, and *second,* authority over the parties concerned. The first comes from the statutory law, which designates the particular proceeding as one of which the court may take cognizance when the parties are properly before it; the second comes from the proper institution of proceedings, and the service of process upon the parties concerned, or something which is by the statute made equivalent to such service.''

The author further says:

''Personal service of process upon residents is also required in some of the states. But, as in all other cases of proceedings *in rem,* if the law makes provision for publication of notice in a form and manner reasonably calculated to bring the proceedings to the knowledge of the parties who use ordinary diligence in looking after their interests in the lands, it is all that can be required. \* \* \* The provisions of the statute concerning the manner of the notice by publication must be complied with substantially, and the proof of publication must conform to the statutory requirements.'' (pp. 886-888).

In *Gordon v. Adams,* 125 Or. 662, 268 P. 60; *Watson v. Jantzer,* 151 Or. 1, 47 P. (2d) 239; and *Guthrie v. Haun,* 159 Or. 50, 76 P. (2d) 292, the question of the sufficiency of the notice was treated by this court as one of jurisdiction. In 26 R. C. L., Taxation 396, § 354, it is said that ''when there has been no notice of the proceedings to enforce the tax lien served upon the owner of the land, the court is without jurisdiction and the proceedings are absolutely void.''

In *Thatcher v. Powell,* 6 Wheat. 119, 5 L. Ed. 221, it appeared that, along with another omission, the clerk of the court had failed to comply with a provision of the Tennessee statute requiring him to make certain publications showing the lands liable for payment of

the taxes, together with the amount of taxes and the charges due thereon. The court, in an opinion by Chief Justice Marshall, held that "these publications are indispensable preliminaries to the order of sale", and, on account of the failure to observe that and another requirement of the statute, that the sale was not merely voidable, but absolutely void. The court said that, "In summary proceedings, where a court exercises an extraordinary power under a special statute prescribing its course, we think that course ought to be exactly observed," and that it was following the construction placed on the statute by the Tennessee court, which had settled the question "on principles which are thought entirely correct."

A similar decision of the Supreme Court is *Dick v. Foraker* 155 U. S. 404, 15 S. Ct. 124, 39 L. Ed. 201. The case arose under a statute of the state of Arkansas, which provided that on the filing of the complaint with the clerk an order should be entered on the record notifying all persons having any right or interest in the lands sought to be sold to appear within forty days and show cause why liens should not be declared on said lands for unpaid taxes, and why said land should not be sold for nonpayment thereof, and that the clerk cause a copy of this order to be inserted twice in a newspaper published in the county, and if there be no such newspaper to post a copy at the courthouse door. Such publication was declared to be notice to all the world of the contents of the complaint. The Supreme Court cited *Gregory v. Bartlett,* 55 Ark. 30, 17 S. W. 344, in which the court held that, unless the order is entered on the record by the clerk, the publication is a nullity, because the statute authorizes nothing except publication of the record, and that a decree entered in a case where an order had not been entered was absolutely

void for want of jurisdiction. Following that decision, the Supreme Court held that since the record in the case before it showed neither notice nor publication the court was without jurisdiction, the decree it rendered was utterly void, and the sale, having been made under the decree, was "equally vicious and wholly null".

Other decisions enunciating the foregoing principles are *Spellman v. Curtenius*, 12 Ill. 409; *McKee v. Champaign County*, 53 Ill. 477; *Fortman v. Ruggles*, 58 Ill. 207; *McGahen v. Carr*, 6 Iowa 331, 71 Am. Dec. 421.

■ It follows from what has been said that the court, in the case of *Grant County v. Arnold et al.*, was without jurisdiction to enter a decree, the sale on foreclosure to the county was absolutely void, the county acquired no title, and the plaintiff acquired no title from the county.

■ The questions of the statute of limitations and estoppel remain to be determined. The applicable statute is § 69-845, Oregon Code 1930, which provides in part as follows:

"Every action, suit or proceeding which may be commenced for the purpose of determining the validity of a sale of lands for taxes, or to quiet the title against such sale or to remove the cloud thereof, or to recover the possession of lands so sold, or for which certificates of delinquency have been issued, shall be commenced within three years from the date of the sale for taxes by the sheriff, and not otherwise, except in cases where the assessment and taxes for which the land was sold or certificate issued had been paid before the sale, or the land redeemed after the sale, or the lands were not subject to taxation at the time the same were assessed".

On principle and authority we are of the opinion that the statute cannot be applied to a case like this where the tax sale is absolutely void. To construe it as barring the right of the true owner to claim his property would be to render it unconstitutional. See 2 Blackwell on Tax Titles (5th ed.) 840, § 895; 26 R. C. L., Taxation 443, § 399; *Martin v. White,* 53 Or. 319, 326, 100 P. 290; *Groesbeck v. Seeley,* 13 Mich. 329. Nothing in the case of *National Surety Corporation v. Smith,* supra, conflicts with this view. We there held that where the defect in the proceedings was a mere irregularity, and the court had jurisdiction to render the decree of foreclosure, the statute of limitations was available as a defense to the suit of the former owner. It so happened that the purchaser was in possession of the land, but the question whether possession was necessary to start the statute running was left open. Nothing, either in the opinion of the majority or in the specially concurring opinion of Mr. Justice ROSSMAN, lends countenance to the view that the mere running of time could be effectual to deprive the owner of his property, in the case of a void decree of foreclosure and a void sale. Indeed, the original opinion in the case, which proceeded upon the theory that the sale was void, expressly held that the statute of limitations was not applicable. In the instant case the record shows that the land in question is, and has at all times been, vacant and unoccupied. Whether the plaintiff's rights would be greater if he were in actual possession need not be considered. It has already been determined by this court that a deed upon a void sale cannot draw to it the constructive possession of unoccupied land. *Martin v. White,* supra, 53 Or. at p. 326. We see no good reason for departing from that principle, and we cannot agree with the proposition, asserted by counsel

for the plaintiff, that "in Oregon a tax deed regularly executed in statutory form is never utterly void", because under § 69-828, Oregon Code 1930, the deed is *prima facie* evidence of the regularity of all antecedent proceedings. That provision does not prevent the court from inquiring into the regularity of the proceedings, and when, from such inquiry, it appears that the court which entered the decree of foreclosure had no jurisdiction, the *prima facie,* or first blush, effect of the deed is swept away.

In support of its claim of estoppel as against the defendant Pilot Rock, the plaintiff invokes the rule that a party who has accepted the fruits of a judgment is estopped afterward to question its validity. Cases are cited in which the court, acting without jurisdiction, has rendered a decree adjudicating water rights, and one of the parties, after enjoying the benefits of such decree, seeks to avoid it. *Hinderlider v. Berthoud,* 77 Colo. 504, 238 P. 64; *Boulder etc. County Ditch Company v. Lower Boulder Ditch Company,* 22 Colo. 115, 43 P. 540. A similar case is *Denver City Irrigation and Water Company v. Middaugh,* 12 Colo. 434, 21 P. 565, 13 Am. St. Rep. 234, in which the defendant in a condemnation proceeding accepted the award and later, in an action brought by him, attempted to assert the invalidity of the judgment because of want of jurisdiction in the court which rendered it. The only other decision cited by the plaintiff is *Arthur v. Israel,* 15 Colo. 147, 25 P. 81, 10 L. R. A. 693, 22 Am. St. Rep. 381; *Israel v. Arthur,* 152 U. S. 355, 38 L. Ed. 474, 14 S. Ct. 583. It there appeared that a wife had deserted her husband and for years lived in adultery with another man. Afterwards, learning that her husband had obtained a decree of divorce, she caused a marriage ceremony with her paramour to be performed and lived

with him as his wife. Actually the decree of divorce was invalid because of a defect in the service. On the death of her husband she claimed his estate as his widow, but was held estopped to attack the validity of the decree of divorce.

We can see no analogy in these cases to the facts of the case at bar. The plaintiff attempts to apply their principle because Pilot Rock was a bidder at the sale at which the plaintiff purchased the land in controversy from the county and was in fact itself a purchaser of other lands. In our opinion there is no element of estoppel in these facts. The plaintiff was in no way misled by the conduct of Pilot Rock, and Pilot Rock did not stand by and permit a court, acting without jurisdiction, to enter a decree in its favor, the fruits of which it accepted and enjoyed. Actually, Pilot Rock got nothing by its purchase except a void deed. The plaintiff "is bound to take notice of all omissions or irregularities which have taken place in the proceedings under which he claims the estate." 1 Blackwell on Tax Titles (5th ed.) 128, § 133. In the case of *Young v. Droz*, supra, a similar question was raised and ruled adversely to the plaintiff's contention. We think the plea of estoppel is without merit.

It results from the foregoing that the decree of the circuit court is reversed and the suit dismissed. None of the parties will recover costs or disbursements.

Petition for rehearing denied September 19, 1944

ON PETITION FOR REHEARING
(151 P. (2d) 439)

LUSK, J.

The plaintiff has filed a petition for rehearing in which, while still contending that the court in the fore-

closure proceedings had jurisdiction notwithstanding the defect in the published summons, he urges that, even though such want of jurisdiction be conceded, we were, nevertheless, in error in holding that in those circumstances the short statute of limitations is not a bar to the defendant's assertion of their title. In view of the fact that counsel for the plaintiff have cited in their petition decisions of the Supreme Court of Washington not heretofore called to our attention by the parties, we deem it appropriate to take notice of the argument now advanced.

It is quite true that the Washington court has uniformly held that the short statute of limitations of that state may be invoked even in a case of a tax foreclosure sale absolutely void for want of jurisdiction in the court which entered the decree, as well as in a case where the decree was procured by fraud. See *Eagles v. General Electric Co.*, 5 Wash. (2d) 20, 104 P. (2d) 912; *White v. Gehrman*, 1 Wash. (2d) 504, 96 P. (2d) 453; *Jorgensen v. Thurston County*, 145 Wash. 282, 259 P. 720; *Keller v. Davis*, 93 Wash. 336, 160 P. 946; *Sparks v. Standard Lumber Co.*, 92 Wash. 584, 159 P. 812; *Savage v. Ash*, 86 Wash. 43, 149 P. 325; *Fleming v. Stearns*, 66 Wash. 655, 120 P. 522; *Baylis v. Kerrick*, 64 Wash. 410, 116 P. 1082; *Huber v. Brown*, 57 Wash. 654, 107 P. 850.

We called attention to four of these decisions in the course of the discussion in *National Surety Corporation v. Smith*, 168 Or. 265, 299, 114 P. (2d) 118, 123 P. (2d) 203, but expressed no opinion as to whether they should be followed in this state, the question which they involved not being then before us. The National Surety Corporation case did, however, draw a distinction between cases where the court had, and those in which it did not have jurisdiction, and, as to

the former, held that the short statute of limitations barred the attempt of the former owner of the property to attack the decree of foreclosure, at least where the purchaser at the tax sale had entered into possession.

But it is argued that, since we considered highly persuasive, if not controlling, certain decisions of the Washington court bearing on the question of the sufficiency of the summons, we should give like effect to that court's construction and application of the statute of limitations. Counsel assert, indeed, that such construction should have controlling effect, under the rule that, as it is sometimes stated, when one state adopts the statute of another it likewise adopts the construction given to the statute by the courts of the former state. But it is only a construction announced before the adoption of the statute that is ever considered controlling: *Getchell v. Walker,* 129 Or. 602, 609, 278 P. 93; *Hoskins v. Dwight,* 69 Or. 558, 566, 139 P. 922; *State v. Townsend,* 60 Or. 223, 229, 118 P. 1020; and the earliest of the Washington cases relied upon is *Huber v. Brown,* supra, decided in 1910, whereas our statute modeled on that of Washington was enacted in 1907 (General Laws of Oregon 1907, Ch. 267). Moreover, the rule invoked by counsel is not one of universal application and will not be observed where such construction would not be in harmony with the spirit and policy of the legislation and decisions of the borrowing state: 34 Am. Jur., Limitation of Actions 43, § 41; *Oleson v. Wilson,* 20 Mont. 544, 52 P. 372, 63 Am. St. Rep. 639. The policy of this state in respect of the question in hand had been announced in *Martin v. White,* 53 Or. 319, 326, 100 P. 290, before the enactment of our present statute, and is contrary to the doctrine of the Washington court. It is true that in *Martin v. White,* supra, the court was not dealing with a tax

foreclosure by judicial process; but that cannot make any difference here, for, whether the proceedings are purely administrative or judicial, the fundamental inquiry is the same, namely, whether the statute of limitations is effective to deprive the owner of real property of his title where the tax deed is a nullity owing to the want of jurisdiction to make the sale.

■ It follows, therefore, that upon this question the Washington cases are to be given only such weight as authority as would be accorded upon a like question to the decisions of the highest courts of any of the sister states, and, since the Washington decisions are not in harmony with precedent in this court, and, moreover, are opposed to the weight of authority (4 Cooley on Taxation, (4th ed.) 2970, § 1511, 2977, § 1513; 51 Am. Jur., Taxation 997, § 1158), we must decline to follow them, notwithstanding the deference due to the tribunal which announced them.

■ It is further argued that, in order to avoid constitutional objections arising from application of the statute to the case of a void sale, it is only necessary to withhold its application in those cases where the land in question remains in the actual possession of the original owner. This is the holding of *Buty v. Goldfinch,* 74 Wash. 532, 133 P. 1057, 46 L. R. A. (N. S.) 1065, Ann. Cas. 1915A, 604, and support for this view is sought to be found by counsel for the plaintiff in the statement in Cooley, *ibid.,* 2975, § 1513, (quoted in *National Surety Corporation v. Smith,* supra, 168 Or. at p. 300) that ''it probably cannot be said that it is beyond the constitutional power of the legislature to give the recorded tax-deed conclusive effect as evidence of title after the lapse of five years' time, in any case where the adverse claimant has no actual possession.'' The rule, as thus limited in *Buty v. Goldfinch,*

supra, is in conflict with *Martin v. White*, supra, for that case involved the title to lands which had never been in the actual possession of any person, and the decision was that it was beyond the power of the legislature to transfer the title of the owner by lapse of time alone.

That this is not a doctrine peculiar to tax cases is illustrated by *Stadelman v. Miner*, 83 Or. 348, 377, 155 P. 708, 163 P. 585, 163 P. 983, where the court, on the authority of *Martin v. White*, supra, held that a void administrator's sale of unoccupied lands did not start the special five-year statute of limitations running against the heirs, and that "it is beyond the power of the legislature to transfer to the purchaser the title of the owner by lapse of time alone." Both these cases reject the rule of constructive possession in the holder of a void title.

The statement in Cooley, relied on by the plaintiff, is not an assertion that in every case where the adverse claimant is not in actual possession such limitations are constitutional when applied to void sales. And, taken from its context, the language can be decidedly misleading. The discussion of this subject in Vol. 4 of Cooley on Taxation (4th ed.) commences at p. 2970, where it is said in § 1510 that generally short statutes of limitation "do not apply where the tax deed is void on its face, or the sale is absolutely void for jurisdictional defects." The author classifies the cases which may be affected by such statutes as follows: "1. Those in which the owner of the original title remains in possession after the tax-sale. 2. Those in which the land is then and remains afterward unoccupied. 3. Those in which the tax-purchaser enters and holds possession claiming title."

As to the third class, the author says that there is no sufficient reason why the holder of the original

title should not be required to bring suit in a time less than twenty years; as to the first class, that "it would be manifest and most gross injustice to make lapse of time alone extinguish the title of the original owner"; and, as to the second class, that "the proper rule is not so clear." He proceeds:

"If no provision is made by statute under which ejectment can be brought in the case of a vacant possession, it would seem that neither claimant could be considered in law negligent, so as to render his claim the proper subject of a statute of repose, until possession was taken by his adversary; but if ejectment is allowed in such cases, then it may possibly be within the power of the legislature to declare that the title of that one of the parties who, constructively, is to be regarded in possession, shall become absolute, if not questioned by suit within the time by the statute limited for that purpose." (pp. 2972, 2973, § 1511)

There is no statute in Oregon authorizing the action of ejectment in the case of unoccupied lands.

In § 1513 the question of constructive possession is discussed, and it is in connection with that discussion that the quoted language is used. But the author condemns the fiction that a void tax title draws to itself constructive possession, and is extremely critical of the view that the statute of limitations runs in such a case, as the following brief quotation shows:

"In the very worst light in which the equities of the original owner may be viewed, they are at the least equal to those of the tax-purchaser; and to make a fiction the instrument by which he is to be debarred of his rights is a very severe, if not excessive, exercise of authority, where the legislature had already put him quite sufficiently at disadvantage. Rules of evidence are subject to legislative control; and therefore the legislature may make the tax-deed evidence of title. Rules of limita-

tion are also subject to its control, and therefore the statute may quiet an open and public exercise of a right which remains unchallenged; but a purely nominal and fictitious exercise of a right by means of the recording of a paper, or even without that, if the legislature shall think proper to dispense with it, is a very unsubstantial basis for a conclusive muniment of title to land. Constructive possession in any case, it would seem, should be in the party having the legal title; and this would leave questions of title open so long as actual possession was had by no one." (p. 2977, § 1513.)

We think it apparent that the authority of Cooley is not on the side of the plaintiff's contention.

Counsel for the plaintiff assert that as the result of our decision in this case "there is obviously no stability to tax titles in Oregon", and they argue:

"If such things as a misspelt name, an error in description, a small amount of excess costs, an inadequacy in price, or, as in this case, an error in the published summons, are going to render the proceeding void, and if the limitation statute does not apply to such defects, then clearly anyone purchasing at a tax sale does so at his peril."

The most recent decisions of this court in cases involving tax titles do not justify placing "an error in the published summons"—at least such an error as that found in this case—in the same category with "a small amount of excess costs", and perhaps with some of the other defects mentioned by counsel. We had supposed that the distinction was made sufficiently clear in *National Surety Corporation v. Smith,* supra, where it was held that "a small amount of excess costs" was a mere irregularity not affecting the jurisdiction of the court. The present decision goes no further than that the statute of limitations is not to be

applied where the court rendering the decree acts without jurisdiction. That compliance with the statutory requirement of notice to be given the defendants through the published summons is essential to jurisdiction is, we think, beyond debate. That the prescribed notice was not given in this case is conceded. It was no different in law than if no notice whatever had been given and no summons attempted to be published. Notice and an opportunity to be heard are of the essence of due process, and we think that, under a proper interpretation of our statute, it should not be held that the legislature intended that a man who has received no notice that his property is about to be proceeded against should lose his title through the passage of time. The legislature has provided for the foreclosure of tax liens in judicial proceedings. It has ordained that the statute of limitations should commence to run "within three years after the date of the sale for taxes by the sheriff", § 69-845, Oregon Code 1930. We think that means a sale ordered by a court during the course of a proceeding in which it has acquired jurisdiction through publication of the summons prescribed by the statute, and that it does not mean a sale wholly unauthorized for want of jurisdiction. In our opinion, the event which the legislature has made the starting point for the running of the statute of limitations has in this case never occurred.

These views are not everywhere held; but we are not disposed, on a question so fundamental, to depart from a doctrine that has stood in this state for more than thirty years, has commended itself to a majority of the courts of the country, as well as to writers upon this subject of acknowledged authority, and is founded in reason and justice.

The petition for rehearing is denied.