# PEREZ Y FERNANDEZ *v.* FERNANDEZ Y PEREZ.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO.

No. 110. Argued March 17, 1911.—Decided April 3, 1911.

Where the District Court of the United States for Porto Rico has general jurisdiction under the act of March 2, 1901, c. 812, § 3, 31 Stat. 953, its power to award relief because of the situation of the property involved against non-resident defendants not found within the District depends on § 8 of the act of March 3, 1875, c. 137, 18 Stat. 472; and the right of absent parties defendants not actually personally notified to have the suit reopened and to make defense depends on the proviso to that section.

Where a defendant has not been actually personally notified as provided in § 8 of the act of 1875, but publication has been resorted to, he has a right to appear and make defense within a year, independently of whether he has had knowledge or notice of the pendency of the action by any methods other than those specified in the statute; and the court has no power to impose terms except as to costs.

The District Court of the United States for Porto Rico having permitted certain defendants not personally notified to come in and defend to do so but only on condition of showing they had not received the published notice, had no knowledge of the pendency of the suit and had no meritorious defense to the bill, the order is reversed, as the defendants have the right to have the case reopened without terms other than payment of costs.

THE facts are stated in the opinion.

*Mr. Frederic D. McKenney,* with whom *Mr. John Spalding Flannery, Mr. William Hitz* and *Mr. T. D. Mott, Jr.,* were on the brief, for appellants.

*Mr. N. B. K. Pettingill* and *Mr. F. L. Cornwell* for appellee submitted.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

José Antonio Fernandez, a judgment creditor of José Perez, in October, 1906, commenced in the court below this suit to unmask alleged fraudulent and simulated mortgages and sales of certain described real property of Perez, the judgment debtor, to the end that such property might be made available to pay the unsatisfied judgment debt. The defendants were José Perez, Victor Ochoa and his wife, all three alleged to be citizens and residents of Spain and ten persons alleged to be citizens and residents of Porto Rico who were averred to be and were sued as the heirs at law of one Maristany. It was alleged that in the years 1899, 1900 and 1902 Perez, who was the registered owner of certain enumerated real estate, had executed and recorded deeds purporting to mortgage the same in favor of Ochoa and Maristany. These deeds, it was alleged, were simulations executed by Perez with the sole purpose of defrauding his creditors and preventing them from collecting their debts. It was additionally charged that to carry out the wrongful purpose which had caused the acts of mortgage to be drawn and recorded and in consequence of a conspiracy between Perez and Ochoa, the latter had in May, 1906, sued in the court below to foreclose the apparent mortgages, and had procured an order of sale and a sale thereunder to be made by the marshal of the court, and at such sale had seemingly bought in the property and received a deed therefor. Ochoa, the alleged plaintiff, was charged to have been but

an interposed person acting, not for himself, but for Perez, the ostensible defendant. Finally, it was charged that the property standing in the name of Ochoa, the alleged purchaser, had despite the sale continuously remained under the dominion and beneficial control of Perez. The prayer of the bill was for a decree recognizing the fraudulent and simulated character of the alleged mortgages and sale, that they be declared to be mere shadows cast upon the title of Perez and that the decree further direct that the property belonging to Perez be ordered to be sold to pay the judgment debt.

The ten persons who were made defendants as heirs or representatives of Maristany having been personally summoned and having failed to appear, the bill was, in December, 1906, taken for confessed against them. On the third day of June, 1907, the counsel for the complainant moved for an order to summons by publication José Perez, Victor Ochoa and his wife. The motion for this order was supported by a return of the marshal showing that the subpœnas issued to the parties named had not been served, because the marshal, after diligent inquiry, had been unable to find them in the district, and by an affidavit of counsel declaring that affiant "is unable to learn of the present whereabouts of said defendants, José Perez y Fernandez, Victor Ochoa y Perez and his wife, Dolores Olavarricia, after duly inquiring, and that, therefore, personal service upon them is not practicable." The order was granted, directing that the defendants named be summoned by publication to appear on or before the third day of August, 1907, the publication to be made "in a newspaper of general circulation in Porto Rico, to wit, 'La Bandera Americana,' once a week for six consecutive weeks." On September 13 following the defendants named not having appeared and proof of publication having been made, the bill was taken for confessed against them. On February 1, 1908, a formal decree was entered

against all the defendants, holding the mortgages and sale to be void as mere simulations, and directing their erasure from the records. The decree recognized the right of complainant to collect his unsatisfied judgment by a sale of the property, and in fact directed the marshal to proceed under an execution which was in his hands to levy upon and sell the property.

Within two months after the entry of this decree and before the marshal had executed it by sale of the property, appearance was entered for José Perez, one of the defendants, and shortly after for Ochoa, and application was made in the name of both to vacate the decree and allow them to defend the suit, on the ground that they were entitled to do so because they had not been personally notified. At the same time, in the same court, a Mrs. Perfecta Blanco, alleging herself to be a resident of Spain, filed her bill against the marshal as well as against José Fernandez and his attorneys of record, alleging that the complainant had in July, 1906, bought from Ochoa the real estate described in the Fernandez suit and that she was entitled to hold the property free from liability under the execution in the Fernandez case. The prayer was for an injunction pending the suit restraining the marshal from selling the property to pay the Fernandez judgment and for a final decree perpetuating the injunction. The application made by Perez and Ochoa to set aside the decree and allow them to appear and defend, and that of Mrs. Blanco for a preliminary injunction, were considered by the court at one and the same time. The court stayed, for a brief period, the sale of the property under the execution issued in the case of *Fernandez* v. *Perez* and the enforcement of the decree in the equity cause. In a memorandum opinion the court declared that this had been done for the following reasons:

First, to enable Perez and Ochoa "to make a first-class showing establishing that neither of them had before the

decree in the equity cause, any actual personal notice or knowledge of its pendency," and that, they or either of them never received any notice or knowledge of the pendency of the same through any of the other respondents in the same mentioned or through any of their aporderados, agents, tenants or others, either in Porto Rico or in Spain before said time, and that they, or either of them, did not personally receive a copy of or hear of or know of the publication of the notice of the pendency of said suit (the equity cause) in La Bandera Americana . . . and that they or either of them never in fact previous to the entry of the decree, received any copy of said newspaper containing such notice through the mails from José Antonio Fernandez, or any other person, or see or hear of such copy being received by any other person in their vicinity in Spain." Second. In order to enable Perez and Ochoa to make "a first-class showing under oath that they in truth and in fact have a meritorious defense to the bill" and to give both Perez and Ochoa an opportunity to swear that the "mortgage to Ochoa in 1899 was in good faith and for a valuable consideration and that the foreclosure of the same was not collusive, . . ." and that Ochoa must also state that his alleged sale to Mrs. Blanco of the property was made in good faith and for valuable consideration as in the deed stated, and if not for that amount then for how much, and that the said deed was made by said Ochoa without the knowledge of the decree in said equity cause, and "if possible he must furnish the affidavit of Mrs. Blanco," stating that her purchase was an honest one and how much she paid for the property.

The stay granted by the court was extended from time to time. There were hearings and, it may be, some evidence tending to show the existence of the facts referred to by the court in the conditions upon which it granted the stay and there was evidence to the contrary. Finally the court disposed of the matter by refusing to set aside the

decree in the equity cause and hence declining to allow Perez and Ochoa to defend and refusing to grant.the application for a preliminary injunction on the bill of Mrs. Blanco.

From a final decree rejecting their application to set aside the equity decree and allow them to defend Perez and Ochoa appeal.

The defendants Perez and Ochoa being citizens of Spain, the court had general jurisdiction. Act March 2, 1901, c. 812, § 3, 31 Stat. 953. Power to award relief because of the situation of the property within the court's jurisdiction and the character of the rights asserted in and to the property even although Perez and Ochoa were non-residents of the district and could not be found therein, depended, as recognized by the court below and by.the parties, upon the act of March 3, 1875, c. 137, § 8, 18 Stat. 472. The right of the absent parties defendant to have the suit reopened and the duty of the court to permit them to make defense depended upon the proviso to ·the section in question. That proviso reads as follows:

"Provided, however, That any defendant or defendants not actually personally notified as above provided may, at any time within one year after final judgment in any suit mentioned in this section, enter his appearance in said suit in said circuit court, and thereupon the said court shall make an order setting aside the judgment therein, and permitting said defendant or defendants to plead therein on payment by him or them of such costs as the court shall deem just; and thereupon said suit shall be proceeded with to final judgment according to law."

As the appearance of Perez and Ochoa was within the year their right to have the decree set aside depended upon whether they had been "actually personally notified" (in the case wherein the judgment was rendered), "as above provided." Treating the words "actually personally notified" as signifying information conveyed to them in any

form of the existence of the suit and concluding from the facts before it that it was established that both Perez and Ochoa had been notified, either by information conveyed to them by persons in Porto Rico, or by the receipt of a copy of the newspaper containing the publication of notice, which the court had directed to be made, the right to appear and defend was denied. But we think the construction of the statute, which the court must necessarily have adopted in order to enable it to reach such conclusion was a mistaken one. The right to appear and defend within the year is given by the proviso to all defendants who have not been "actually personally notified as above provided." To determine, therefore, whether a defendant who appears and asks to be allowed to defend has been actually personally notified in such a manner as to exclude him from the enjoyment of the right involves ascertaining not whether he had been notified in any possible manner, but whether he had been "actually personally notified as above provided," that is, as required by the previous provisions of the section. Now, the previous provisions are these; 18 Stat. 472, c. 137, March 3, 1875, § 8:

"That when in any suit, commenced in any Circuit Court of the United States, to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur, by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be. . . ."

After thus giving authority to the court to authorize the

actual personal service of a notice outside of the district, the statute then, in cases where such personal notice is impossible, provides for publication as follows: "Or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks. . . . ". Plainly, therefore, the previous provision to which the proviso applies exacts an actual personal notice resulting from the service on the party outside of the district of an order of the court directed to him and requiring him to appear and defend within a time stated, the whole conformably to the express terms of the statute. In other words, where the property is situated in the district where the suit is brought as provided in the statute the right of the court to exert its authority is made to depend upon two forms of notice, which are distinct one from the other. First, an actual notice calling upon the person to appear, and which, in virtue of an express authority of the court, may be served upon the party outside of the district where the suit is pending. Second, a notice by publication calling upon the party to appear and defend within the statutory time, this latter notice, however, being only necessary where the former method cannot be employed. Considering the two distinct subjects, the proviso of the statute ordains that where the actual personal notice has not been made as provided and publication has therefore been resorted to, that within a year the party has a right to appear and the case must be reopened to permit him to make his defense. That is to say, the statute, without ambiguity, confers the right to have the case reopened wherever the jurisdiction of the court has rested upon publication and denies such right where the requirements of the statute as to actual personal notice have been complied with. It follows that in a case where the method for giving the actual notice pointed out by the statute has not been resorted to, and,

on the contrary, publication of notice was the basis of the
jurisdiction of the court, an inquiry as to information con-
veyed by letter or by other means of knowledge of the
pendency of the suit to a defendant, for the purpose of
determining whether such defendant has a right to appear
within the year and have the case opened to enable him to
defend, is wholly immaterial. We say this because, from
the text of the statute as above elucidated, it clearly re-
sults that the right which it confers to have a case re-
opened is rested upon the criterion afforded by the record
upon which the judgment was obtained, and is not caused
to depend upon the uncertainty which might result from
a resort to matters extraneous to the record. As the mis-
construction by the court of the statute in the respect just
stated requires a reversal, it is not essential that we should
go further. In order, however, that misconception may
be avoided we think it well to observe that in the cases to
which the statute applies the right to appear and have a
cause reopened is not dependent upon terms to be fixed
by the court, except to the extent that the statute pro-
vides for terms as to costs. This, we think, is clear, since,
after providing for the entry in the Circuit Court of his
appearance by a defendant embraced within the statute,
it is said: "And thereupon the said court shall make an
order setting aside the judgment therein and permitting
said defendant or defendants to plead therein on payment
by him or them of such costs as the court shall deem
just; . . ."

*Reversed and remanded with directions for further pro-
ceedings in conformity with this opinion.*