# JOSÉ ANTONIO FERNANDEZ

## *v.*

# JOSÉ PEREZ.

Mayaguez, in Equity, No. 184.

ON JURISDICTION AND PRESCRIPTION.

Equity—Creditors' Bill.

1. A creditor cannot set aside a fraudulent conveyance executed prior to the inception of his claim against the debtor.

Equity Pleading—Estoppel.

2. Defenses in equity may be waived, but this relates to matters of procedure, not of jurisdiction. The defense of an adequate remedy at law is such a matter of procedure.

Equity—Remedy at Law.

3. The fact that an equitable right or defense is carried over into a law court by legislation does not take away the equitable remedy. Local statutes of limitation will be applied by a Federal court sitting in equity.

Prescription and Limitation.

4. In Porto Rico there are prescriptions applying to the acquisition of property rights, and others which, like the common-law limitation, apply to the bringing of suits. The fact that equity is largely based upon the civil law does not change the principle that the line of demarcation between equitable and legal remedies in the Federal courts cannot be obliterated by local legislation.

Creditors' Bill—Trust.

5. A creditors' bill to set aside a fraudulent conveyance is a different thing from a bill seeking to have the holder of the title declared a trustee for a creditor, and they are governed by different principles as to limitations.

Fernandez v. Perez.

Trust—Holding Title for Creditor.

    6. If a title is held in trust for a debtor, it can be subjected even by a subsequent creditor.

Opinion filed October 24, 1913.

*Mr. N. B. K. Pettingill* for complainant.

*Mr. T. D. Mott* for defendant Perez.

HAMILTON, Judge, delivered the following opinion:

In this cause the defendants obtained leave on June 17, 1913, to amend their answers by setting up the Porto Rican statute of prescription of four years, and when, under rule 29, this was called up for disposition, they added and argued by consent the further defense of want of equity. These proceedings call for a review of the whole litigation.

This case, in one form or another, has been upon the dockets of this court from the very beginning. In 1899 defendant Perez owned property and owed debts in Porto Rico, one of which was a note for 6,000 pesos to the estate of Claudio Barro, who had recently died in Spain. One Aguerria was the executor, qualified in Spain, but not in Porto Rico. The complainant Fernandez had been appointed attorney in fact of Aguerria and sued Perez upon the debt in the provisional court, the predecessor of this court. A writ of attachment was issued and levied, but vacated by the Federal courts because an executor could not maintain a suit in a jurisdiction

foreign to his appointment. Perez v. Fernandez, 202 U. S. 80, 50 L. ed. 942, 26 Sup. Ct. Rep. 561, S. C. 1 Porto Rico Fed. Rep. 443. Thereupon, defendant Perez made conveyances of his property to different parties, with the intent, according to the bill, of secreting it from his creditors. In 1901 defendant Perez went further, and sued in this court for damages alleged to arise from the said attachment, and on December 12, 1901, recovered judgment against complainant for $7,000. Complainant Fernandez appealed to the Supreme Court, but failed to supersede the judgment. The result was that while he won his suit in the Supreme Court, April 23, 1906, there was nothing left in Perez's name from which to make up the amount wrongfully collected, and in fact defendant Perez had removed to Spain. The judgment had meantime grown by interest to $10,000, and was filed in the registry of property for the district of Mayaguez, according to the laws of Porto Rico.

One of the Perez conveyances alleged to be simulated was that of November 10, 1899, to Victor Ochoa for 20,000 pesos and covering five pieces of land in Mayaguez. This mortgage matured in 1904, but no attention was paid to it, and no attempt made to enforce it until after the decision of the United States Supreme Court. Ochoa was then induced by Perez to institute foreclosure, under which, on June 13, 1906, the marshal of the insular district court made his deed to Ochoa, which was inscribed on June 22, 1906. Ochoa is alleged never to have exercised any rights of ownership over the property, which remained in the same custody as before. There are other matters set out in the bill, all alleged to have been equally fictitious, and other property is alleged to be owned by Perez by

virtue of the winding up of a partnership. Parties representing these interests are made defendants.

On October 10, 1906, Fernandez filed his bill in this court, setting up the above facts, and on the 30th of October defendant Perfecta Blanco, the mother-in-law of defendant Perez, inscribed at Mayaguez a deed executed by Perez in her favor in Spain on July 15, 1906, which record the bill alleges is subsequent in time and authority to the *lis pendens* of the present suit. On April 11, 1908, said defendant Blanco also filed a bill in this court seeking to have the land conveyed to her declared free of any lien under Fernandez's judgment. This suit went to the Supreme Court, and was decided on matters of practice not affecting the merits, in 220 U. S. 224, 232, 55 L. ed. 443, 447, 31 Sup. Ct. Rep. 412. By this time the judgment amounted to $14,000, while the market value of all the property was much less.

The bill was brought against all the parties interested in the title, including Perfecta Blanco, to the different pieces of property formerly of defendant Perez, and sought to have the property declared subject to the lien of complainant's judgment, and sold for the satisfaction thereof, and that any conflicting claims or liens be declared inferior to the complainant's and be canceled as clouds upon the title of the purchaser at said sale.

1. The first defense to the bill to be considered is the want of equity. This objection was formerly raised by motion to dismiss for want of equity, and sometimes by demurrer, but under No. 29 of the new equity rules can now be set up in the answer and heard, as in this case, separate from the merits. The point alleged in the case at bar is that it is conceded the

complainant was not a creditor at the time of the execution of the mortgage complained of, and so has no standing in court to have it set aside, unless an allegation is made, which is not made, that the transaction was intended in fraud of future creditors. Civil Code of Porto Rico, § 1258.

"With reference to the creditors, it is decided, as is logical, by the decision of January 18, 1901, that the first requisite necessary to maintain the action for rescission of contracts executed in fraud of creditors is that the plaintiff legally claim to be the creditor of the grantor. Therefore the proof of the debt is the first condition that the plaintiff must fulfil as a basis for setting up the fraud committed to his prejudice, it being ordinarily necessary that the debt be anterior to the sale, whether such debt be due or not, or else proof must be made that the sale was executed with the intent to defraud a future creditor."

"After the foregoing statement we arrive at the affirmation that the first requisite is the existence of a debt; which existence must be anterior to the contract, although the maturity of such debt may be posterior to the date of said contract, since it is possible to prepare the insolvency in anticipation of the maturity of the debt. The date of his credit, and its being anterior to the date of the contract, must be proven according to ordinary principles by him who wishes to maintain the action for rescission." 8 Manresa, Civ. Code, 733.

Even a voluntary conveyance is good against future creditors, unless executed as a cover for future schemes of fraud. Horbach v. Hill, 112 U. S. 144, 28 L. ed. 670, 5 Sup. Ct. Rep. 81; Horn v. Volcano Water Co. 13 Cal. 62, 73 Am. Dec. 569; Schreyer v. Scott, 134 U. S. 405, 33 L. ed. 955, 10 Sup. Ct. Rep. 579.

Fernandez v. Perez.

It is admitted that complainant was not an antecedent creditor, and there is no allegation that the transaction was a cover for future schemes of fraud, and if a conveyance is not fraudulent at its inception, it cannot be made so by subsequent conduct of the parties. 14 Am. & Eng. Enc. Law, 269. The cases above cited are those of debt due by contract, but the same rules have been applied where the creditor is one by a subsequent tort. Gray v. National S. S. Co. 115 U. S. 116, 29 L. ed. 309, 5 Sup. Ct. Rep. 1166.

2. It is contended by the complainant, however, that the defendant is estopped from setting up this defense now, seven years after the filing of the bill. It is true that defenses should be seasonably raised, or they are to be held waived. It has been held in a case where adequate remedy at law was alleged that good faith and early assertion of rights are as essential on the part of the defendant in equity as on the part of the complainant. Brown, B. & Co. v. Lake Superior Iron Co. 134 U. S. 530, 33 L. ed. 1021, 10 Sup. Ct. Rep. 604; Reynes v. Dumont, 130 U. S. 354, 395, 32 L. ed. 934, 945, 9 Sup. Ct. Rep. 486. "Defenses existing in equity suits may be waived, just as they may in law actions, and when waived, the cases stand as though the objection never existed. Given a suit in which there is jurisdiction of the parties, in a matter within the general scope of the jurisdiction of courts of equity, and a decree rendered will be binding, although it may be apparent that defenses existed which, if presented, would have resulted in a decree of dismissal." Hollins v. Brierfield Coal & I. Co. 150 U. S. 371, 380, 37 L. ed. 1113, 1115, 14 Sup. Ct. Rep. 127.

In answer to this the defendant says that such waiver occurs only of technical defenses, of matters of procedure, and that

jurisdictional matters not only are not waived by not being alleged at an early stage, but the court itself will take cognizance of the objection if the parties do not; that in the case at bar the fact complainant was not a creditor at the time of the alleged fraudulent transaction goes to the jurisdiction of the court, and there is no possible evidence which will supply equity.

The distinction is a just one. It is true that under the decisions a court of equity will proceed although there may be an adequate remedy at law, if that defense is not seasonably made; but it cannot be true that the court would proceed if there were no adequate remedy in equity. Going further would increase costs without any corresponding result.

3. Defendant further argues that the statute of limitation applies to this equitable proceeding because the relief sought is analogous to that declared in the Porto Rican Civil Code, and that in such case the legal statute of limitation is not merely persuasive, but is obligatory in chancery, for otherwise courts of concurrent jurisdiction would not have uniformity of decision. Godden v. Kimmell, 99 U. S. 201, 210, 25 L. ed. 431, 434; Bank of United States v. Daniel, 12 Pet. 32, 56, 9 L. ed. 989, 998. Chancery will even apply the statute of limitations by analogy in a case within its own exclusive jurisdiction.

It is unquestionably true that the principles of equity jurisprudence are being from time to time carried over into statute law, and in this way the field of concurrent jurisdiction is constantly widened. This does not take away the equity jurisdiction, but makes in each instance a case where the courts of equity apply the statutory limitation in order to secure uni-

formity.  Pom. Eq. Jur. §§ 139, 140, 173, 182; 16 Cyc. 33.
Such a statute furnishes, therefore, a concurrent jurisdiction,
even though it may not be fully adequate in the sense of equity.
Even if adequate, it does not affect the jurisdiction of the Fed-
eral court.  "The line of demarcation between equitable and
legal remedies in the Federal courts cannot be obliterated by
state legislation."   Hollins v. Brierfield Coal & I. Co. 150
U. S. 371, 37 L. ed. 1113, 14 Sup. Ct. Rep. 127.   But the
Federal court under Revised Statutes, § 914, U. S. Comp.
Stat. 1901, p. 684, will apply the statute of limitations as
well as matters of procedure.

4. Defendants urge that the local law should be applied
under § 8 of the Foraker act, placing Porto Rico in the same
category in this respect as the states of the Union.   This con-
tention covers the fact that the local Civil Code provides for a
suit in the local courts to set aside fraudulent conveyances at
the instance of creditors, and also provides what is there termed
a prescription of four years.   Prescription is used in two senses
in the Porto Rican Civil Code.   In the one it applies to the
acquisition of property rights, which, however, is not the case
at bar; in the other, it applies, like the common-law limitation,
to the bringing of suits, and that is the case at bar.   The Porto
Rican Civil Code is that of Spain, which was in 1888 extended
to Porto Rico.   The Spanish Civil Code is the old Roman law
coming down from the Partidas and other compilations until
the recodification of 1823.

It is true that much of the English equitable jurisprudence
was taken from the Roman civil law, which is the father of the
Spanish.   It raises an interesting question, therefore, as to
what is the effect upon the Federal chancery jurisdiction of

meeting here in a civil-law country its own principles in a different form. The question, however, is academic rather than important. The law of Porto Rico is by the Foraker act put on a parity with the law of the several states so far as concerns the Federal court; but it has certainly no higher value, and it has been held that the Federal procedure "is not affected by the fact that a statute of the state in which the property is situated and in which the suit is brought authorizes such a proceeding in the courts of the state, because the line of demarcation between equitable and legal remedies in the Federal courts cannot be obliterated by states legislation." Hollins v. Brierfield Coal & I. Co. supra.

5. The complainant, however, insists that these considerations do not apply to his bill. They apply to a creditors' bill, as where an injured creditor seeks the aid of a court of equity to have a fraudulent conveyance avoided. The defendants insist that such is the bill at bar, while the complainant says that he does not seek to have a fraudulent conveyance set aside, but to have the holder of it declared a trustee for the complainant. The fact that there have been a series of grantees makes no difference in principle. If each one, in point of fact, held and holds the title for the benefit of Perez, it is the same as if Perez still held the title himself. It is a case of a naked trust, not even one of a trust *in invitum*. There is nothing upon which the statute of limitations could act. The statute does not run against an acknowledged trustee any more than it does against an acknowledged agent. The party in possession is really the same as the original grantee, and there is no reason why a court of equity should not follow up secret conveyances, and, instead

of setting them aside, compel the last holder to hold for the creditors of the true owner. Freedman's Sav. & T. Co. v. Earle, 110 U. S. 710, 28 L. ed. 301, 4 Sup. Ct. Rep. 226; Taylor v. Bowker, 111 U. S. 110, 28 L. ed. 368, 4 Sup. Ct. Rep. 397. This will not impair the local registry laws in any particular. If the bill is proved, the court could compel the last holder to make conveyance, if that should be deemed necessary.

6. The complainant and defendants take different views of the bill, but it would seem that the view of the complainant is correct. A good deal is said in the bill about the transactions being fraudulent, but this is all by way of inducement, and there is sought no remedy to set aside the deeds, but rather upholding them as conveying the title, although asserting at the same time that this title is held in trust for the original owner. This, therefore, is not a creditors' bill to set aside a fraudulent conveyance, nor is it one to set aside a voluntary conveyance. The conveyances are not described as voluntary, for that means an absolute gift to someone, while in the case at bar the naked title is said to be conveyed, although the beneficial ownership remains in the original owner. It is true that this is not clearly asserted in the bill as to defendant Blanco. Nevertheless Blanco is, under the allegations of the bill, asserted to be affected by the facts set out, because, while her deed was dated prior to the judgment of the complainant, it was not recorded in Porto Rico until subsequent to that judgment and subsequent to the recording of its *lis pendens*.

It follows, therefore, that the defenses of prescription and want of equity, which under rule 29 were called up for disposition before the final hearing, must be decided adversely

Fernandez v. Perez.

to the defendants, and the cause must go to hearing upon the merits.

And it is so ordered.