## BRACH v. MOEN.*

(Circuit Court of Appeals, Eighth Circuit. March 14, 1925.)

No. 6650.

1. **Equity ⬅36—Court may set aside convey-ance of land within jurisdiction, or, having jurisdiction of owner, may decree conveyance of land without jurisdiction, but cannot set aside transfer.**

Federal District Court in equity, sitting in district where land is situated, may declare deed thereof void and cancel it, or, having jurisdiction of person of owner, may decree a conveyance of land without its jurisdiction, but cannot set aside a transfer of property so situated, being lacking in jurisdiction of the res.

2. **Trusts ⬅257—Vendors of realty held nec-essary parties to suit to cancel contract and deeds, notwithstanding trustee, who had act-ed for them, was made party.**

Owners of apartment houses, who, after entering into contract with real estate dealer for sale thereof, gave deeds to one to whom real estate dealer had arranged sale and re-ceived in exchange conveyances from such per-son of farm lands, *held* necessary parties to suit by such purchaser to set aside such con-veyances and cancel contract, notwithstanding trustee, who had acted for them in such trans-action, was made party, nor was fact that they testified as witnesses sufficient to make them parties; the manner of bringing in such par-ties being provided by Judicial Code, § 57 (Comp. St. § 1039).

3. **Exchange of property ⬅8(1) — Persons having interest in land, though not parties to contract, after giving quitclaim of such in-terest, held not necessary parties to suit to cancel contract and deeds.**

Persons having interest in realty involved in suit to cancel contract and deeds, who were not parties to such contract, and who before institution of suit had quitclaimed to plaintiff, *held* not necessary parties.

Appeal from the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

Suit by E. C. Moen against Edwin J. Brach and others. Decree for plaintiff, and the named defendant alone appeals. Re-versed and remanded.

Henry Jackson Darby, of Chicago, Ill. (Frederick Mayer, of Chicago, Ill., and De-loss C. Shull, of Sioux City, Iowa, on the brief), for appellant.

J. A. Prichard, of Onawa, Iowa, and G. T. Struble, of Sioux City, Iowa (C. N. Jep-son, J. W. Anderson, and B. L. Sifford, all of Sioux City, Iowa, on the brief), for ap-pellee.

Before KENYON, Circuit Judge, and TRIEBER and PHILLIPS, District Judges.

*Rehearing denied May 26, 1925.

KENYON, Circuit Judge. This is an ap-peal on the part of Edwin J. Brach (other defendants not joining therein) from a de-cree of the United States District Court of the Northern District of Iowa, made and en-tered September 11, 1923. The case was commenced in the district court of Monona county, Iowa, January 24, 1922, by E. C. Moen against Richard Powers, Elmer E. Brach, Edwin J. Brach, George W. Stewart, C. A. Moore, and George W. Stewart Com-pany, residents of Chicago, Illinois, to can-cel and set aside a certain contract alleged to have been made between Richard Powers and Elmer E. Brach, party of the first part, and E. C. Moen, party of the second part, and to set aside and cancel certain deeds given by E. C. Moen and his wife to Edwin J. Brach, covering two certain tracts of farm lands situated in Monona county, Iowa, in one of which his brother, Ole A. Moen, had an interest, and with his wife joined in the deed thereto. The petition alleged that the contract and deeds had been secured by fraud and false representation, and prayed a writ of attachment against the property in Monona county formerly owned by the plain-tiff, Moen, and transferred to defendant Ed-win J. Brach. The case was removed to the United States District Court by defendants. The bills and answers were numerously amended in that court, and after the sub-mission of the case plaintiff was permitted to amend his bill to conform to the proof, and defendant Edwin J. Brach was granted permission to introduce additional evidence.

The facts are complicated and as abundant as the pleadings. Prior to the making of the contract and transfer of the properties involved, appellee was the owner of two tracts of land near Onawa, Iowa, which were free of incumbrance, in one of which his brother, Ole A. Moen, had an interest. One of the tracts contained 320 acres and the other 165 acres.

Mrs. Aurora C. Upton and Mrs. Emily Upton Brach, her daughter, were residents of the city of Chicago, and were the owners of certain property therein, consisting of three apartment houses. Mrs. Upton's prop-erty was known as the Rokeby street prop-erty. It was heavily incumbered with mort-gages. Mrs. Brach was the owner of two buildings, known as the Pine Grove proper-ty and the Barry avenue property, also heav-ily incumbered with mortgages. Mr. George W. Stewart was a real estate agent and op-erator in the city of Chicago, having in his employ Richard Powers and C. A. Moore, defendants in the trial court, and also a Mr.

Blair and a Mr. Williams, and others, who acted for him in his various real estate deals. Defendant Edwin J. Brach was the agent of his wife, Mrs. Emily Upton Brach, and Mr. J. G. Upton, son of Mrs. Aurora C. Upton, and brother of Mrs. Emily Upton Brach, represented both Mrs. Brach and Mrs. Upton as broker in the sale of the properties. Later he was agent for appellee, and trustee for his mother. Mrs. Upton was also represented by her husband, Abraham L. Upton, in the various transactions antedating this case.

George W. Stewart in April, 1921, entered into written contracts to purchase from Mrs. Upton and Mrs. Brach their equities in these three pieces of property. He paid $1,000 down on each one, which left approximately $19,000 to be paid Mrs. Upton and $38,000 to be paid Mrs. Brach. Mrs. Upton had on her property a first mortgage of $145,000, on which $7,500 had been paid, and before the consummation of the transaction with appellee placed another mortgage thereon of $70,000. Mr. Stewart was to take Mrs. Upton's property, known as the Rokeby street property, at a valuation of $227,500, subject to mortgages in the sum of $207,500, and the contract was made between her and Robert W. Blair, one of Stewart's employés. Mrs. Brach's two properties were subject to heavy mortgages; she having a claimed equity of $20,000 in each. They were known, respectively, as the Barry avenue property and the Pine Grove property. On the Barry avenue property there was a first mortgage of $125,000, a second mortgage of $75,000, and by the written agreement with Stewart of April 9, 1921, he was to pay $20,000, and give a purchase-money mortgage for $25,000, making the consideration for this property $245,000. This contract was made in the name of Fred J. Williams (one of Stewart's employés), who later assigned his right to Robert W. Blair (another employé).

The Pine Grove property was incumbered by a first mortgage of $142,500, and a second mortgage of $70,000 was to be placed thereon by Mrs. Brach. By the written agreement of April 13, 1921, signed by both Stewart and Robert W. Blair, it was agreed to pay $232,500 for said property—$1,000 down, $19,000 cash on consummation of the agreement, and the assumption of the mortgages. Blair's interest was later assigned to one Powers (another employé of Stewart). In two of the contracts it was provided that J. G. Upton was to have the management of the building and collect the rents for an adequate compensation.

When the time for payment arrived Stewart was unable to pay the amounts he had agreed to pay. Through the instrumentality of acquaintances of Stewart in Sioux City, Iowa, appellee was placed in contact with Stewart and went to Chicago for the purpose of seeing him with relation to trading his farm lands for some income-producing property. He was shown by Stewart or his men the three pieces of property before described belonging to Mrs. Upton and Mrs. Brach, for the purchase of which Stewart had the written contracts in the names of his employés. Certain representations were made to appellee by Stewart as to the Rokeby street apartment building, its value, condition as to decorations and repairs, the income therefrom, and the rentals and expenses, and on the strength thereof he entered into a contract, supposedly with defendants Brach and Powers, the same purporting to be executed by Elmer E. Brach, by Richard Powers. (No Elmer E. Brach was known to the parties. He evidently intended to sign the name of the husband of the owner, which was Edwin J. Brach, the appellant.) By the terms of this contract Moen agreed to convey to Powers and Brach the two farms, hereinbefore referred to, containing 485 acres, free of incumbrance, in exchange for said Rokeby street apartment buildings, subject to the mortgage incumbrances in the amount of $207,500, due in four years, at 6 per cent. per annum. Under the terms of that contract Moen was not required to assume said mortgage indebtedness. The contract was made subject to inspection of the farm lands and acceptance thereof.

Stewart, not being able to make the payments to Mrs. Upton and Mrs. Brach, provided by the contracts, aggregating the sum of $19,000 less certain adjustments to Mrs. Upton, and $38,000 less certain adjustments to Mrs. Brach, arranged through J. G. Upton, broker for Mrs. Upton and Mrs. Brach, to have them take the lands of appellee, Moen, in lieu of what Stewart was to pay them. Stewart during these transactions represented himself to appellee as the agent of Brach. Before the final completion of the matter, Mr. Abraham L. Upton (husband of Mrs. Aurora C. Upton) and Mr. Edwin J. Brach, representing Mrs. Upton and Mrs. Brach, went to Iowa and inspected the lands, and upon their return recommended to these ladies that they accept the lands in lieu of the amount Stewart was to pay them in cash for their properties, and the matter was so

arranged. Mrs. Upton made the deed of her property, as arranged by Stewart, direct to Ed. C. Moen, his brother Ole A. Moen, Harold R. Moen, and Belle R. Moen. Appellee Moen, and his wife, in pursuance of the arrangement, made a deed (in which his brother and wife and Harold R. Moen joined) of the lands direct to Edwin J. Brach, who, as pleaded in his answer and as the evidence disclosed, was to hold as trustee for Mrs. Upton and Mrs. Brach; their respective interests being shown by an instrument given to them by him.

Before the final closing of the matter Mrs. Upton placed a mortgage on the property to J. G. Upton (her son), as trustee, for $70,000, the notes being payable to her own order. Mrs. Brach made deeds of her two pieces of property to satellites of Stewart, and it is claimed these properties have since been conveyed to other parties. When Moen received the deed, he found that it provided for his assumption (which was different from the contract) of the mortgages. This he objected to, and continued to object, but took no action, evidently relying on the promise of Stewart that the matter would be changed. Brach, in his answer and evidence, denied that Stewart was his agent; alleged that he knew nothing of any representations made by Stewart to Moen, and that the deed was made by Mrs. Upton direct to Moen at Stewart's request to save stamp taxes; denied that he had made any contract with Moen, or that Powers had any authority to sign his name to any contract; and asserted that he held the property as trustee for Mrs. Upton and Mrs. Brach who were the equitable owners thereof. Moen also, as a part of the transaction, constituted J. G. Upton as his agent to collect the rents upon the Chicago property, and Moen assisted in collecting the revenues from the farms, sending the same to J. G. Upton, who, by the written instrument before referred to, was his agent to collect the rents on the Chicago property.

Abraham L. Upton was active in the transaction, and, when it was finally closed in Chicago, Brach, Upton, J. G. Upton, and their counsel, Mr. Frederick Mayer, acting for both of the women, were present; Abraham L. Upton and defendant Edwin J. Brach acting for their wives, together with J. G. Upton. It is claimed that Mrs. Upton paid a commission to J. G. Upton of about $7,000 as his commission on the deal, and that Mrs. Brach paid him $13,000. Appellee claims he did not discover Stewart's lack of interest in the property until after he had filed his original bill and had taken some testimony. Mrs. Upton and Mrs. Brach, when Stewart presented contracts to them for the sale of their respective properties running to men in Stewart's office, knew that Stewart was not carrying on the transaction in his own name. It was known to J. G. Upton, who was negotiating the transactions for his mother and his sister, that neither Blair nor Williams had any interest in the matter. The mortgage and notes in the sum of $70,000, made by Mrs. Upton to her son, J. G. Upton, as trustee, were in process of foreclosure when this case was being tried.

The net result of this excursion by Moen into the realms of high finance was to find himself divorced from the ownership of 485 acres of unincumbered farm land in Iowa, and having on his hands an apartment building in the city of Chicago with mortgages thereon of $207,500, which by the terms of the deed he had assumed, and which, according to some of the evidence in the case, was worth no more than the amount of the mortgages. He discovered that he was the victim of a swindle, the extent of which, however, he claims not to have known until after the trial of the case commenced.

At the conclusion of the trial in the United States District Court, the court filed an opinion in which he found fraud on the part of defendant Stewart, and that Edwin J. Brach and his beneficiaries, Mrs. Upton and Mrs. Brach, were put upon notice of Stewart's fraudulent acts, and that in accepting the fruits of his transaction they did so with the burden of its frauds and defects, and entered a decree canceling the contract made on the 9th day of June, 1921, referred to in the bill of complaint, canceling the conveyance made by the Moens of the farm lands, canceling the deed executed by Aurora C. Upton and Abraham L. Upton to Ed. C. Moen, Ole A. Moen, Harold R. Moen, and Belle R. Moen, purporting to convey the Rokeby street property in Chicago, and quieting title in appellee, E. C. Moen, against all claims of the defendants and each of them, and also any claims of Aurora C. Upton and Emily Upton Brach to the lands conveyed to Edwin J. Brach, defendant.

Defendant Brach insisted throughout the trial by numerous motions that Aurora C. Upton and Emily Upton Brach were indispensable parties to the suit to cancel said deeds, and that the District Court was without jurisdiction to proceed in the absence of such parties. It appeared in the trial that before rendition of the decree Ole A. Moen and wife had conveyed by quitclaim

deed to appellee, Moen, all of their interest in the land. Appellee, during the progress of the trial, tendered a special warranty deed, dated the ——— day of May, 1922, executed by Ed. C. Moen, Ole A. Moen, Anna Moen, Belle R. Moen, and Harold R. Moen to Aurora C. Upton and Abraham L. Upton, as grantees, conveying title to them of the Chicago apartment property known as the Rokeby street property. This deed was tendered "for the use and benefit of the parties to this suit and willing to place the necessary revenue stamps upon the deed if accepted." No order was made by the court that the deed be delivered to the grantees named in said deed, or to any party to the suit for their use and benefit.

Appellant contends that (a) Aurora C. Upton and Emily Upton Brach were indispensable parties to the suit, and that without them as parties the court had no jurisdiction to proceed; (b) that the appellee's cograntors, Ole A. Moen and wife, were indispensable parties; (c) that Mrs. Upton and Mrs. Brach were bona fide purchasers of the farms from Stewart for value, without notice of fraud or other ground for cancellation; (d) that appellee ratified the entire transaction after full knowledge of the facts. The trial court filed a written opinion, in which he found certain facts and expressed his views of the transaction. As indicative of the basis of his holding we refer to and set out excerpts of his opinion as follows:

"Aurora C. Upton and Emily Upton Brach knew the history of their deal with Stewart. Through their agent, J. G. Upton, they knew of Stewart's inability to perform his contract, and that he was not financially responsible therefor. Before the transaction was closed they all well knew that Stewart had no title to the property, and that he was merely negotiating a trade of his interest in the Rokeby street property for these farms. They knew that their only hope of consummating their deal with Stewart lay in Stewart's getting the title to these farms without incumbering them. The testimony without dispute shows that Aurora C. Upton and Emily Upton Brach were selling these parcels of property on the basis of $20,000, each less necessary adjustments (which reduced the price considerably below $20,000) for their equities, and to accomplish such sales were to pay 3 per cent. on the total purchase price as a commission. This commission in the instance of the Rokeby street property amounted to about $7,000. Thus it appears that Aurora C. Upton was will-

ing and anxious to dispose of her equity in that property on the basis of $12,000. Approximately the same situation existed as to each of the other properties being sold by Emily Upton Brach. Her commission to her brother was approximately $13,000. The unavoidable inference is that these parties all knew, before the transaction with the plaintiff was closed, that Stewart was trading his interest in the Rokeby street property, which Aurora C. Upton was willing to accept approximately $12,000 for, for these two farms, which Mrs. Upton and Mrs. Brach, under the advice of their husbands and son and brother, were quite willing to take as to the equivalent of $60,000, and which plaintiff testified were worth $100,000. And I may say that the testimony fairly shows them to have been worth from $75,000 to $80,000. It must be remembered that this transaction was closed in the very presence of the defendant Brach, Abraham L. Upton, J. G. Upton, and their counsel, Mr. Frederick Mayer. Abraham L. Upton and the defendant Brach were acting for their wives, and J. G. Upton was the agent of and acting for both of these women. There was no talk or intimation of any other consideration for the plaintiff's deeds than the delivery of the deed to the Rokeby street property, subject to $207,500 incumbrance. * * *

"In this connection there were circumstances brought home to the defendants at the beginning of the transaction. When they came to close their contract with Stewart, Stewart presented contracts in each instance running to men of straw as grantees. Two of the contracts ran to his employé, Blair, and a third to another employé, Williams. Neither of these men had any interest in the transaction, and J. G. Upton knew of this and apprised his principals that it was in accordance to the custom of Stewart's business transactions. They, however, insisted that he sign the contracts, but nevertheless the men of straw appeared therein as the purchasers. Here was a badge of fraud, exposed at the very threshold of the transactions. * * *

"True, after Stewart had been required to sign the contracts below the names of these men of straw, when he came to deal with the plaintiff, he constructed another man of straw in effect, but defendant had been put on guard. But there are other circumstances: The defendants knew that these two valuable farms, which were being accepted as ample security for $60,000, were being obtained by Stewart in exchange for an equity

for which Mrs. Upton was receiving only about $12,000. Then there was the concealment of the fact that Mrs. Upton herself held the last $62,500 mortgage indebtedness, evidenced by notes which, on the plaintiff's failure to pay the maturing installment, she transferred to a man of straw for the purpose of beginning foreclosure in his name.

"Then there is the trust agency agreement, which the plaintiff was required to execute and enter into, amounting practically to a receivership in favor of Mrs. Upton and Mrs. Brach. These parties had no reason to believe that any such agreement was contemplated in the negotiations between Stewart and plaintiff. On the contrary, the agreement by its very'terms was to rest upon a consideration moving from Mrs. Upton and Mrs. Brach to the plaintiff. This feature of the transactions was negotiated, not by Stewart, but by Mrs. Upton and Mrs. Brach themselves, through their agents. I cannot but be impressed and believe that these parties from the beginning expected and planned recovering back the Rokeby street property. The statement made to the plaintiff by J. G. Upton, who had acted as the agent of these parties throughout, and who was then occupying the attitude of a trustee for their benefit in the agency contract, confirms me in this belief. In January, 1922, a few days before the plaintiff decided to begin this suit, he asked J. G. Upton relative to the prospects of disposing of the Rokeby street property. Upton replied, 'Man, you have no equity in that building to speak of;' and said 'That Stewart had just skinned me out of everything.' Such was no doubt the fact, and I am constrained to believe that J. G. Upton was as fully aware of that when the transaction was closed in 1921 as he was in January, 1922.

"I think, in the circumstances, and in view of the further fact that Mrs. Upton and Mrs. Brach through their agents so carefully paved the way for obtaining the full fruits of Stewart's transaction, even to the extent of a substantial novation substituting the responsibility of the plaintiff for the irresponsibility of Stewart in the contract of conveyance, that defendant Brach and his beneficiaries, Mrs. Upton and Mrs. Brach, must be deemed to have had notice of Stewart's fraudulent acts, and must accept the fruits of his transaction with the burden also of its frauds and defects."

We are met at the threshold of the case, however, by what we regard, upon the record presented, as insurmountable objections to an affirmance of this decree. It is apparent that Mrs. Aurora C. Upton and Mrs. Emily Upton Brach were the real parties in interest, and that their rights are seriously affected by the decree. While there is nothing in the deed from the Moens to Brach to show that he took the property as a trustee, yet his first answer filed pleaded this fact, and the evidence fully sustains it. If Mrs. Upton and Mrs. Brach were indispensable parties the court should have sustained the motion to dismiss, unless plaintiff made them parties. The decree sets aside the conveyance in the state of Illinois made by Mrs. Upton and her husband, Abraham L. Upton, to the Moens, and quiets title as against Mrs. Aurora C. Upton and Mrs. Emily Upton Brach as to the Iowa lands, even though they were not parties, on the theory that defendant Brach was their trustee, and was appearing for them and defending for them.

[1] This raises interesting questions of jurisdiction. A court in equity sitting in a state or district where land is situated and having jurisdiction of the person may decree a conveyance of land in another state by such person and enforce it by process. If the parties are personally within the jurisdiction of the court, the court can act in personam, but a court cannot adjudge that a deed of land in another state is void and cancel the same. Its decree as to the res in another state can have no effect beyond the jurisdiction of the court. It can only affect such res by acting upon the person within its jurisdiction. Moen, being within the jurisdiction of the court, could have been directed to make the deed to Mrs. Upton; but such procedure was not followed. The court cannot adjudicate rights of parties unless they are actually or constructively before the court. There was no authority in the court to set aside a transfer of property in the state of Illinois, and that part of the decree is clearly erroneous.

In Carpenter v. Strange, 141 U. S. 87, 105, 106, 11 S. Ct. 960, 966 (35 L. Ed. 640), the court said: "The real estate was situated in Tennessee and governed by the law of its situs, and while by means of its power over the person of a party a court of equity may in a proper case compel him to act in relation to property not within its jurisdiction, its decree does not operate directly upon the property nor affect the title, but is made effectual through the coercion of the defendant, as, for instance, by directing a deed to be executed or canceled by or on behalf of

the party. The court has no inherent power, by the mere force of its decree, to annul a deed, or to establish a title.'"

In Fall v. Eastin, 215 U. S. 1, 8, 30 S. Ct. 3, 6 (54 L. Ed. 65, 23 L. R. A. [N. S.] 924, 17 Ann. Cas. 853) the court says: "A court of equity having authority to act upon the person may indirectly act upon real estate in another state, through the instrumentality of this authority over the person. Whatever it may do through the party it may do to give effect to its decree respecting property, whether it goes to the entire disposition of it or only to affect it with liens or burdens."

In Pennoyer v. Neff, 95 U. S. 714, 720 (24 L. Ed. 565), the court said: "The authority of every tribunal is necessarily restricted by the territorial limits of the state in which it is established. Any attempt to exercise authority beyond those limits would be deemed in every other forum, as has been said by this court, an illegitimate assumption of power, and be resisted as mere abuse."

In Muller v. Dows, 94 U. S. 444, 449 (24 L. Ed. 207), the court said: " * * * We think the power of courts of chancery in this country is sufficient to authorize such a decree as was here made. It is here undoubtedly a recognized doctrine that a court of equity, sitting in a state and having jurisdiction of the person, may decree a conveyance by him of land in another state, and may enforce the decree by process against the defendant. True, it cannot send its process into that other state, nor can it deliver possession of land in another jurisdiction, but it can command and enforce a transfer of the title." Watkins v. Holman et al., 16 Pet. 25, 10 L. Ed. 873; Shields and Others v. Robert R. Barrow, 17 How. 130, 15 L. Ed. 158; Corbett v. Nutt, 10 Wall. (77 U. S.) 464, 19 L. Ed. 976; Hart v. Sansom and Another, 110 U. S. 151, 3 S. Ct. 586, 28 L. Ed. 101; Ellenwood v. Marietta Chair Co., 158 U. S. 105, 15 S. Ct. 771, 39 L. Ed. 913; Dull v. Blackman, 169 U. S. 243, 18 S. Ct. 333, 42 L. Ed. 733; York County Sav. Bank v. Abbot (C. C.) 139 F. 988; Oakman et al. v. Small, 282 Ill. 360, 118 N. E. 775; Froelich v. Swafford et al., 35 S. D. 35, 150 N. W. 476, 893; Caldwell et al. v. Newton et al., 99 Kan. 846, 163 P. 163; Wharton, Conflict of Laws, § 288; Foster, Federal Procedure, vol. 1, p. 273.

[2] The rule as to who should be made parties to a suit in equity is stated in Story's Eq. Pl. § 72, as follows: "It is a general rule in equity (subject to certain exceptions, which will hereafter be noticed) that all persons materially interested, either legally or beneficially, in the subject-matter of a suit are to be made parties to it, either as plaintiffs or as defendants, however numerous they may be, so that there may be a complete decree, which shall bind them all. By this means the court is enabled to make a complete decree between the parties, to prevent future litigation by taking away the necessity of a multiplicity of suits, and to make it perfectly certain that no injustice is done, either to the parties before it, or to others, who are interested in the subject-matter, by a decree, which might otherwise be grounded upon a partial view only of the real merits. When all the parties are before the court, the whole case may be seen; but it may not, where all the conflicting interests are not brought out upon the pleadings by the original parties thereto." See, also, U. S. v. Northern Pac. R. R. Co. et al., 134 F. 715, 67 C. C. A. 269; Minnesota v. Northern Securities Co., 184 U. S. 199, 235, 22 S. Ct. 308, 46 L. Ed. 499; Williams v. Bankhead, 19 Wall. (86 U. S.) 563, 22 L. Ed. 184; Continental & Commercial Trust & Savings Bank et al. v. Corey Bros. Const. Co. et al., 208 F. 976, 982, 126 C. C. A. 64.

It cannot, we think, be seriously contended that the decree entered here affecting the rights of Mrs. Aurora C. Upton and Mrs. Emily Upton Brach could be sustained unless they were either in court as parties or authoritatively represented before the court. To meet this situation it is contended that they were fully represented by their trustee, Edwin J. Brach; the court saying: "In these circumstances I am of opinion that Aurora C. Upton and Emily Upton Brach are fully represented on the record by their trustee."

The doctrine as to trustee representation relied on is based largely on Kerrison, Assignee, v. Stewart et al., 93 U. S. 155, 160 (23 L. Ed. 843), where the court says: "It cannot be doubted that, under some circumstances, a trustee may represent his beneficiaries in all things relating to their common interest in the trust property. He may be invested with such powers and subjected to such obligations that those for whom he holds will be bound by what is done against him, as well as by what is done by him. The difficulty lies in ascertaining whether he occupies such a position, not in determining its effect if he does. If he has been made such a representative, it is well settled that his beneficiaries are not necessary parties to a

792     4 FEDERAL REPORTER, 2d SERIES

suit by him against a stranger to enforce the trust (Shaw v. Norfolk Co. R. R. Co., 5 Gray, 171; Bifield v. Taylor, 1 Beat. 91; Campbell v. R. R. Co., 1 Woods, 376; Ashton v. Atlantic Bank, 3 Allen, 220); or to one by a stranger against him to defeat it in whole or in part (Rogers v. Rogers, 3 Paige, 379; Wakeman v. Grover, 4 Paige, 34; Winslow v. M. & P. R. R. Co., 4 Minn. 317; Campbell v. Watson, 8 Ohio, 500). In such cases, the trustee is in court for and on behalf of the beneficiaries; and they, though not parties, are bound by the judgment, unless it is impeached for fraud or collusion between him and the adverse party." Also Vetterlein v. Barnes, 124 U. S. 169, 8 S. Ct. 441, 31 L. Ed. 400; McBurney v. Carson, 99 U. S. 567, 25 L. Ed. 378; Sears v. Alpheus Hardy and Others, 120 Mass. 524.

We need not point out the manifest differences in the Kerrison Case and the case at bar. The circumstances as to the trusteeship are entirely different. Edwin J. Brach was a trustee, merely holding the property for Mrs. Upton and Mrs. Brach. Whether all the facts and circumstances in evidence might be sufficient to show that Mr. Brach's authority to act for his wife as agent and trustee was complete, and that she would be bound thereby, and that the trusteeship theory should apply to her, may be a debatable question; however, as to Mrs. Upton and her husband it is not. Mr. Brach had no authority from her to do anything. He was not her agent. He was not acting for her in the transaction. He had no interest in the property. He certainly was invested with no power as to her that would bind her by what he might do. There is in the declaration of trust a statement as to the sale of the land to Stewart. This was in the nature of permitting a fulfilment of an option which might seem to imply that Brach was empowered to deal with the property. It is to be noted that this option expired before this suit was commenced. However, it also indicates a limitation upon power except as to making a transfer to Stewart. There was certainly no power given to sell to any one else. Mrs. Upton's husband, Abraham L. Upton, and J. G. Upton, her son, represented her. Her part of the rents and revenue of the farm came to her from J. G. Upton, he receiving the same from Moen. Brach had nothing whatever to do with the Rokeby street property, which was the property she deeded to Moen. The title was taken in his name, at least as to Mrs. Upton, merely as a passive trustee. Mrs. Brach intrusted her matters to her husband and to her son; Mrs. Upton to her husband and to her brother. Moen knew the transfer to him was from Mrs. Aurora C. Upton and her husband, Abraham L. Upton. He cannot well say that his transaction was entirely with Brach, and that he so understood it. He attempted, with his brother, to make a deed back to Mrs. Aurora C. Upton of the Chicago property. The situation as to this deed shows the necessity of Mrs. Aurora C. Upton being a party. No tender had been made to her of the deed, and it was tendered in court for the use and benefit of the "parties to this suit." This certainly is not an adequate method of protecting the rights of parties concerned. We cannot escape the conclusion as to Mrs. Upton that Mr. Brach was not the kind of trustee who could act for or bind her in any way, except in the limited way before pointed out as to Stewart. The fact that they were witnesses in the case is not sufficient to make them parties. 23 Cyc. p. 1252, and cases there cited.

The opportunity was presented at the time of some of plaintiff's amendments to make Mrs. Upton, Mrs. Brach, and their husbands parties to the case. The manner is provided by section 57 of the Judicial Code (Comp. St. § 1039), which would be applicable to this situation. The property which Moen was seeking to clear from a cloud was in the jurisdiction of the United States District Court. The question of title could be settled by bringing in the nonresidents in the manner provided in said section 57. While it does not give jurisdiction in personam as to residents of other states, it would have made possible the entry of a decree setting aside the deed from the Moens to Mrs. Upton, and quieting title as against Mrs. Emily Upton Brach and Mrs. Aurora C. Upton in the Iowa land if the court should have been so advised. Arndt v. Griggs, 134 U. S. 316, 10 S. Ct. 557, 33 L. Ed. 918; Roller v. Holly, 176 U. S. 398, 20 S. Ct. 410, 44 L. Ed. 520; Perez y Fernandez v. Fernandez y Perez, 220 U. S. 224, 31 S. Ct. 412, 55 L. Ed. 443; Greeley v. Lowe, 155 U. S. 58, 15 S. Ct. 24, 39 L. Ed. 69; Dick v. Foraker, 155 U. S. 404, 15 S. Ct. 124, 39 L. Ed. 201; Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 20 S. Ct. 559, 44 L. Ed. 647; Schultz v. Diehl, 217 U. S. 594, 30 S. Ct. 694, 54 L. Ed. 896. Of course, Mrs. Upton and Mrs. Brach could have applied for leave to become parties, and perhaps in not doing so, and in plaintiff not making them parties, there is some jockey-

ing for position. A court of equity should have all the necessary parties before it who may be affected adversely by its decree. Only in this way can complete justice be done, and the rights of all protected.

[3] The question is raised that Moen's cograntors in one of the deeds were indispensable parties. The contract for the transfers was made entirely by E. C. Moen, although his brother seems to have had an interest in one of the parcels of land. At the trial it appeared that the brother, Ole A. Moen, and wife, had conveyed by quitclaim deed to plaintiff Moen all of their interest in the land. At the time of the submission of the case to the court they had no interest in the land, and, not being parties to the contract in the first instance, while they would have been proper parties in the case, we do not regard them as indispensable ones. Bennett v. Glaspell, 15 N. D. 239, 107 N. W. 45.

The relation of Harold R. Moen to the transaction is not clear, and apparently not considered by either side as important. On account of the absence of indispensable parties, and further on account of the decree setting aside a transaction as to real estate in another state and quieting title against persons not parties to the case, it is our duty to reverse the same and remand the case for further proceedings in harmony with the views herein expressed; and it is so ordered.

Reversed and remanded.